NOT DESIGNATED FOR PUBLICATION

No. 112,067

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

RICARDO BARNHART,
*Appellant*.


MEMORANDUM OPINION

Appeal from Ford District Court; E. LEIGH HOOD, judge. Opinion filed October 9, 2015. Vacated and remanded with directions.

*Derek W. Miller*, of Miller Law Firm, LLC, of Liberal, for appellant.

*Kathleen Neff*, assistant county attorney, *Natalie Randall*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., BRUNS and SCHROEDER, JJ.

*Per Curiam*:  On appeal, Ricardo Barnhart alleges multiple errors by the district court and prosecuting attorney, most notably, the showing of an unredacted video by the prosecutor of one of the State's key witnesses before the jury. Both the prosecutor and defense attorney had agreed the video needed to be redacted to eliminate the prejudicial statements about Barnhart. We find the statements were so prejudicial that the district court's attempt through a limiting instruction to correct the prosecutor's showing of the unredacted video was insufficient. The district court abused its discretion by not granting

1

a mistrial on its own motion. We reverse Barnhart's convictions and remand for a new trial. With this ruling, we decline to address the other issues raised by Barnhart on appeal.

FACTS

On March 19, 2013, A.R. informed school officials there had been a fight at her home the night before between her great-uncle, Barnhart, and his girlfriend, Trista Myers. Law enforcement was contacted, and A.R. was formally interviewed. A.R. told Officer Sarah Bangert that the argument between Barnhart and Myers quickly turned physical.

Based upon A.R.'s statement, Dodge City police officers initiated a traffic stop of Barnhart's vehicle and placed Barnhart under arrest. Myers was in Barnhart's vehicle at the time of the stop. She had visible injuries but denied Barnhart caused them. Myers was taken to the police station and formally interviewed. During the interview, Myers stated she had been beaten by Barnhart and provided details of the beating.

The facts surrounding the allegations and testified to by the various witnesses are well known to the parties, and for the purposes of this opinion they do not need to be repeated here.

At trial, Myers and the other witnesses recanted their prior statements about Barnhart beating Myers and testified that Myers was actually beaten by someone else. The prosecutor played videos of three witnesses, including a video of Amy Rodriguez' (A.R.'s mother) interview with police. Rodriguez' video contained statements that required redaction. The prosecutor knew its redaction machine was not working properly; however, she did not tell Barnhart's attorney there had been ongoing problems. The prosecutor played the improperly redacted video for the jury without verifying the prejudicial statements were in fact redacted. From the record it appears Barnhart's attorney relied on the prosecutor's statements the video was properly redacted. The

unredacted interview contained several prejudicial statements as later described in this opinion. Once she realized the redacting process had failed, the prosecutor stopped the video before it was played to the jury in its entirety. The district court gave a limiting instruction to the jury to disregard the prejudicial information. Barnhart did not request a mistrial.

Barnhart was ultimately found guilty of (1) aggravated battery, a level 4 person felony; (2) aggravated battery, a level 7 person felony; (3) battery, a class B person misdemeanor; and (4) endangering a child, a class A person misdemeanor. He was sentenced to a total prison term of 185 months. Barnhart timely appealed.

ANALYSIS

*The showing of the unredacted video tape was highly prejudicial.*

On appeal, Barnhart argues that the showing of the unredacted video containing highly prejudicial statements about his prior wrongful acts violated his fundamental rights to a fair trial.

At trial, Barnhart failed to object to the statements contained on the unredacted video, but the prosecutor stopped the video, disclosed the error to the court, and the issue was considered by the district court. In a conference outside of the jury's presence to discuss the error, the district court asked Barnhart if he wanted a limiting instruction given to the jury. Barnhart said yes, and the district court gave a limiting instruction to the jury to disregard the prejudicial information on the video. This issue was preserved for appeal.

When the unredacted tape was played for the jury, the jury heard that Barnhart:

1.  Had a history with drugs and alcohol abuse;
2.  Was violent when he was on drugs;
3.  Was attending corrections;
4.  Had failed multiple drug tests at corrections for methamphetamine use;
5.  That either he or his brother, Henry, had just been released from prison for burglary; and
6.  Had been in and out of prison for 15 years.

On appeal, Barnhart asserts that despite his trial counsel not asking for a mistrial, the district court should have granted a mistrial after the prejudicial information was played for the jury. The State argues that in order to preserve this issue, Barnhart's counsel should have objected to the admission of the unredacted tape. It is very clear from reading the trial transcript that Barnhart and the prosecutor had extensive pretrial discussions regarding what portions of the video would be redacted with Barnhart and the prosecuting attorney agreeing only the redacted video would be shown to the jury. Neither the prosecutor nor Barnhart's attorney listened to the video to make sure it had been properly redacted prior to admitting it into evidence and exhibiting it to the jury.

The Fourteenth Amendment to the United States Constitution guarantees a defendant's right to a fair trial. *State v. Johnson*, 258 Kan. 61, 68, 899 P.2d 1050 (1995). Pursuant to K.S.A. 22-3423(1)(c), "[t]he trial court may terminate the trial and order a mistrial at any time that he finds termination is necessary because . . . [p]rejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution." A mistrial will not be granted under K.S.A. 22-3423(1)(c) unless the rights of either the defendant or the State have been substantially prejudiced. *State v. McCorgary*, 224 Kan. 677, 687, 585 P.2d 1024 (1978). Whether the district court should have granted a mistrial *sua sponte* under

4

K.S.A. 22-3423(1)(c) is analyzed under an abuse of discretion standard. See *State v. Wimbley*, 271 Kan. 843, 851-52, 26 P.3d 657 (2001).

> "Declaration of a mistrial is a matter entrusted to the district court's discretion, and the judge's choice will not be set aside without an abuse of that discretion. *State v. Daniels,* 278 Kan. 53, 66-67, 91 P.3d 1147, *cert. denied* 543 U.S. 982 (2004); *State v. Manning,* 270 Kan. 674, 696, 19 P.3d 84 (2001). An appellate court's inquiry should consider whether a limiting instruction was given, the degree of prejudice, and whether any evidence improperly admitted would affect the outcome of the trial. *State v. Sanders,* 263 Kan. 317, 324, 949 P.2d 1084 (1997)." *State v. Dixon*, 289 Kan. 46, 55, 209 P.3d 675 (2009).

A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. See *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

> Pursuant to K.S.A. 2014 Supp. 60-455(a):

> "[E]vidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion."

"These safeguards are designed to eliminate the danger that the evidence will be considered to prove the defendant's mere propensity to commit the charged crime." *State v. Wells*, 289 Kan. 1219, 1227, 221 P.3d 561 (2009) (citing *State v. Gunby*, 282 Kan. 39, 48, 144 P.3d 647 [2006]).

The prejudicial statements exhibited in the video clearly fall under K.S.A. 2014 Supp. 60-455 and were inadmissible. Both the prosecutor and Barnhart agreed prior to the trial the evidence was inadmissible and needed to be redacted. When the redaction

failed, the unredacted video was played, and the district court issued the following limiting instruction to the jury:

> "Ladies and gentlemen of the jury, during the playing of the DVD recording, you heard some testimony by Ms. Rodriguez regarding the usage of alcohol and drugs by the Defendant, as well as a reference to Corrections. You are instructed to disregard this evidence and not consider it during your deliberations."

This information was highly prejudicial. The jury heard that Barnhart was a violent drug addict who had been in and out of prison and was currently attending corrections. Additionally, we note the limiting instruction failed to tell the jury to disregard all the statements of wrongful conduct about Barnhart announced on the unredacted video.

> "'"[A]dmission of prior wrongful acts simply to show the defendant's bad character, notwithstanding that one possessed of a bad character is more likely to commit a crime than one who is not, is likely to prejudice the jury and blind it to the real issue of whether the defendant is guilty of the crime charged. For example, the jury may feel unsure that the government has proved its case, but decide that the defendant is an evil person who belongs in prison anyway. The jury may wish to punish the defendant for the prior act, even if they are unconvinced that he committed the act charged. Moreover, the jury may be unconvinced that the defendant committed either act, but that he more than likely committed at least one of them and should be punished."'" *Wells*, 289 Kan. at 1234 (quoting *United States v. Peden,* 961 F.2d 517, 520 [5th Cir. 1992]).

The unredacted statements on the video were not played for any legitimate purpose and, as the prosecutor admitted during oral argument, occurred because she was in a hurry and the error was hers. While we recognize the playing of the unredacted video was not intentional, that does not lessen the prejudicial impact it had on Barnhart's right to a fair trial. The video highlighted Barnhart's prior wrongful acts, and as such, these statements were extremely prejudicial.

The final step in determining whether the district court erred in not granting a mistrial is whether the improper statements affected the outcome of the trial. Here, the jury heard multiple highly prejudicial statements about Barnhart. The jury was also called upon to determine the credibility of the victim and the witnesses to decide whether to believe their initial version of the events or their recanted version. Once the jury heard the unredacted video, it was impossible for a limiting instruction to cure, especially when it failed to address all of the prejudicial issues the jury heard when the video was played. We cannot say the error was harmless, and we are not firmly convinced it did not affect the outcome of the trial. See *State v. Clay*, 300 Kan. 401, 408, 329 P.3d 484 (2014). The party benefitting from the error always bears the burden of proving it harmless under this standard. *State v. Herbel*, 296 Kan. 1101, 1110, 299 P.3d 292 (2013). The State has not convinced us the error was harmless. Once the video was exhibited and the bell was rung, we find the district court abused its discretion in not granting a mistrial *sua sponte* when the prosecutor inadvertently violated the agreement with Barnhart's attorney to only exhibit the redacted video to the jury.

With this finding, we reverse the convictions and remand for a new trial on all counts; we also deem it unnecessary to address the other errors claimed by Barnhart on appeal.

Reversed and remanded for a new trial.