# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2604

_____

United States of America

*Plaintiff - Appellee*

v.

Ira Alan Arias

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Aberdeen

_____

Submitted: June 13, 2019
Filed: August 26, 2019

_____

Before COLLOTON, KELLY, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Ira Alan Arias was convicted by a jury of three counts of aggravated sexual abuse of a child. Arias raises three issues on appeal. First, he argues that the trial court erred in permitting two witnesses to offer Federal Rule of Evidence 413 testimony because their allegations were not substantially similar to the instant offense and were subject to exclusion under Federal Rule of Evidence 403 as unfairly

prejudicial to him. Second, he argues that a mistrial was required when a government witness blurted a statement that violated an order *in limine* prohibiting references to Arias's incarceration. Third, he argues that the district court abused its discretion by permitting testimony by the victim that she had been diagnosed with additional mental health issues post-offense while failing to conduct an *in camera* review of mental health records related to the diagnosis. We affirm the district court on the first two issues, but remand to the district court for an *in camera* review of the mental health records to determine whether refusal to allow access to the records was harmless.

## I.     Background

Arias attended his sister's wedding on May 2, 2015. His minor niece, K.P., also attended the wedding. K.P. later alleged that Arias sexually assaulted her in the hotel room they were sharing for the wedding. In particular, K.P. alleged that Arias groped her genitals before forcibly raping her. K.P. reported that she also suffered scarring on her right arm from being pinned against a bed frame. There were no other witnesses to the assault.

Following a voluntary dismissal without prejudice of a second superceding indictment, the grand jury indicted Arias on April 4, 2018, charging him with three counts of Aggravated Sexual Abuse of a Child, in violation of 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(A), (B), and (C). The trial commenced on April 16, 2018.

Prior to trial, the district court ruled on several motions. The first dispute centered around K.P.'s mental health records. Arias sought the production of K.P.'s mental health records from a facility in Tennessee where K.P. reportedly received treatment. Arias was aware of the records because K.P.'s grandmother stated that K.P. was receiving treatment at the facility. The court denied the request deeming it a "fishing expedition." Arias next moved for production of mental health records pre-

dating the alleged offense date. The district court denied the second motion, again finding that the requests appeared to be a "fishing expedition" and that K.P.'s mental health records were protected by the psychotherapist-patient privilege. At no point during the relevant proceedings was the government in possession of the requested treatment records. The court did, however, rule that Arias would be allowed to question the victim regarding her diagnosis of bipolar disorder which pre-dated the alleged assault.

The government gave notice of five witnesses it intended to call to testify under Federal Rule of Evidence 413. Arias moved to strike each of the witnesses, contending that the testimony was not sufficiently similar and that any probative value was substantially outweighed by its unfair prejudice. After reviewing the proposed testimony, the district court excluded three of the witnesses's testimony as too dissimilar from the current offense to "establish a pattern of behavior" under Rule 413. The district court permitted the proposed testimony from the remaining two witnesses. Each of those two witnesses was prepared to testify that, like K.P., she knew Arias and was sexually assaulted by him. Each witness would also testify: that Arias groped the witness's breasts; that he otherwise used force throughout the assault; that he used alcohol on the night of the assault; that the assault happened in the early morning hours; and that he committed the assault in a location where the witness was isolated. The district court held that this testimony was sufficiently similar to the instant offense to support admission. Finally, the district court entered an order *in limine* prohibiting the introduction of evidence regarding Arias's incarceration or recent release from incarceration.

At trial the government sought to introduce the issue of K.P.'s mental health on direct examination. The government began by asking K.P. whether her parents' divorce had an effect on her health. K.P. responded that she was diagnosed with depression. The government then asked her: "Have you been diagnosed with

anything else?" K.P. responded, "Yes. After this incident had happened, not the divorce." Arias's objection was overruled.

The questioning continued. The government eventually asked the following question: "Since the assault, have you since been diagnosed with something else?" K.P. responded "Yes." Arias's objection was again overruled. The government followed up, asking "What?", to which K.P. responded, "Anxiety and PTSD."

Arias asked for leave to make a motion outside of the presence of the jury and to strike the answer. In response, the court offered the following instruction:

> The Court will instruct you that psychologically – psychological symptoms diagnosed post-incident, post-May of 2015, are extremely limited relevance to you all, if any. What the Court was expecting is something that had been diagnosed prior to May of 2015 as the answer. But the Court does think that the testimony as given can stand.

During recess, Arias objected to the testimony and moved for a mistrial, arguing that it was "a due process violation and a confrontation clause violation" to allow testimony about K.P.'s mental health while denying access to the witness's mental health records. Arias noted that, without the records, he had no idea whether or not that diagnosis had ever been made. The court denied the motion and stated that it did not believe allowing the statement was "harmful in any significant way to the defendant."

Arias renewed his objection the following day, reiterating the argument that a diagnosis of PTSD by a mental health professional bolstered the credibility of K.P.'s allegations and that fundamental fairness required that the mental health records be

produced to allow for effective cross-examination of K.P. on that point.[1] The district court again denied the motion, explaining that allowing testimony about K.P.'s pre-existing mental health issues was sufficient without requiring review of mental health records.

A police officer also testified about the investigation of Arias after the alleged assault of one of the Rule 413 witnesses. During his testimony, he stated that Arias was in custody in 2001 because Arias was "under arrest for a parole violation." Arias objected, arguing that the testimony violated the order *in limine* prohibiting evidence about his prior incarceration. The court gave the jury the following curative instruction:

> Disregard anything about a parole violation. People can be on parole for any small matter. And the fact that he was—had a parole violation isn't to be considered by you in any way. The answer that the Court was looking for is that he was in custody. The Court will take up any further matters outside the hearing of the jury, but you are instructed to disregard that there was some parole violation.

Arias was convicted on all three counts. The district court sentenced Arias to three concurrent terms of 360 months' imprisonment to be followed by six years of supervised release. Arias timely appealed.

## II.    Discussion

### A.    Admission of Evidence of Prior Sexual Misconduct

---

[1] As Arias's counsel put it, "After obtaining that Court's ruling that the mental health records will not be released, my position is the government opens the door by asking K.P. about post-incident diagnosis, and K.P. waives her psychotherapist privilege by disclosing her diagnosis."

"We will not reverse a district court's evidentiary rulings unless they constitute a clear and prejudicial abuse of discretion." United States v. Holy Bull, 613 F.3d 871, 873 (8th Cir. 2010). A "district court's balance of the prejudicial and probative impacts of evidence is accorded 'great deference.'" United States v. Crow Eagle, 705 F.3d 325, 328 (8th Cir. 2013) (quoting United States v. Pumpkin Seed, 572 F.3d 552, 558 (8th Cir. 2009)).

Rule 413(a) specifically allows the court to admit evidence that the accused has committed "any other sexual assault." Fed. R. Evid. 413(a). The evidence of prior similar offenses may be considered for all relevant purposes "including the defendant's propensity to commit such offenses." United States v. Gabe, 237 F.3d 954, 959 (8th Cir. 2001) (citing Fed. R. Evid. 413(a), 414(a)). Such evidence still must satisfy Federal Rule of Evidence 403, but should be admitted "unless its probative value is 'substantially outweighed' by one or more of the factors enumerated in Rule 403, including 'the danger of unfair prejudice.'" Id. (quoting United States v. LeCompte, 131 F.3d 767, 769 (8th Cir. 1997)). Our standard for admitting evidence under Rule 413 recognizes that the rule embodies a "strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible." LeCompte, 131 F.3d at 769.

Under our deferential standard of review, the district court's decision to admit the testimony of two witnesses who claimed they were sexually assaulted by Arias did not amount to a clear and prejudicial abuse of discretion. The record reflects that the district court engaged in the required balancing test before deciding to admit the testimony of the two witnesses (and excluded three other witnesses because their alleged incidents were not meaningfully similar to the instant case). The proposed testimony of the two witnesses aimed to establish a pattern of behavior in which Arias, after a night of drinking, felt emboldened to commit sexual assault on females he was familiar with once they were in secluded locations. While there were other factual discrepancies among the assaults, Arias was given the opportunity to cross-

examine the witnesses regarding those differences and to argue to the jury that the incidents were too dissimilar to be given any weight. Arias likewise had a chance to address other issues concerning the reliability of the witnesses' testimony, such as the lapse in time since the prior assault, through cross-examination. Cf. Gabe, 237 F.3d at 960 (affirming the admission of testimony of an assault that occurred twenty years before the offense at issue by noting that issues of reliability were subject to cross-examination).

While we understand Arias' objections that these incidents are not similar enough or close enough in time and acknowledge that this presents a close question, under our precedent applying Rule 413, the district court did not commit a clear and prejudicial abuse of discretion by allowing testimony from the two witnesses. See United States v. Never Misses A Shot, 781 F.3d 1017, 1028 (8th Cir. 2015) (affirming that the applicable legal standard under Rule 413 and Rule 403 "doesn't require that the testimony be identical or nearly identical to what's alleged in the indictment").[2]

B.      Denial of Motion for Mistrial Regarding Evidence of Arias's Prior Incarceration

"The denial of a motion for mistrial is reviewed for an abuse of discretion." United States v. Thompson, 533 F.3d 964, 971 (8th Cir. 2008) (citing United States v. Smith, 487 F.3d 618, 622 (8th Cir. 2007)). "We give the district court 'broad

_____

[2]Arias also argues that various remarks offered during the testimony of one of the witnesses were so inflammatory that they could not be addressed via curative action by the court. The court sustained objections to almost all of the challenged testimony and specifically informed the jury to disregard several of the comments. "A jury is presumed to follow its instructions." United States v. Flute, 363 F.3d 676, 678 (8th Cir. 2004) (quoting Weeks v. Angelone, 528 U.S. 225, 234 (2000)). We see no clear and prejudicial abuse of discretion with regard to the court's treatment of the comments.

discretion to grant or deny a motion for mistrial because it is in a far better position to weigh the effect' of any possible prejudice." United States v. Urqhart, 469 F.3d 745, 749 (8th Cir. 2006) (quoting United States v. Davidson, 122 F.3d 531, 538 (8th Cir. 1997)). "Admission of a prejudicial statement is normally cured by striking the testimony and instructing the jury to disregard the remark." United States v. Brandon, 521 F.3d 1019, 1026 (8th Cir. 2008) (citing United States v. Urick, 431 F.3d 300, 304 (8th Cir. 2005)). "We assume that the jury followed the district court's instruction." United States v. Fletcher, 322 F.3d 508, 516 (8th Cir. 2003). "[W]here there is 'substantial evidence of appellant's guilt, any error in the failure to declare a mistrial was harmless.'" Urqhart, 469 F.3d at 749 (quoting Urick, 431 F.3d at 305).

The district court did not abuse its discretion when it denied the motion for mistrial. The court immediately struck the testimony and provided a thorough curative instruction to dispel any possibility that the jury would consider it. Considering the nature of the charged offenses and the evidence against Arias, a blurted comment that Arias had previously committed a parole violation was not the sort of evidence that would create "an overwhelming probability" that the jury would be unable to follow the court's curative instruction. See United States v. Uphoff, 232 F.3d 624, 626 (8th Cir. 2000). We affirm the district court's denial of the motion for mistrial.

    C.    Denial of Motion for Mistrial Concerning Statements Indicating a PTSD Diagnosis

The Sixth Amendment recognizes the right of defendants to confront witnesses in criminal proceedings. See U.S. Const. amend. VI. We ordinarily review "evidentiary rulings regarding the scope of a cross examination for abuse of discretion, but where the Confrontation Clause is implicated, we consider the matter de novo." United States v. White Plume, 847 F.3d 624, 629 (8th Cir. 2017) (quoting United States v. Williams, 796 F.3d 951, 960 (8th Cir. 2015)). The Confrontation

-8-

Clause "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." United States v. Jasso, 701 F.3d 314, 316 (8th Cir. 2012) (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam)). Arias argues that the joint effect of the district court's decision to both permit K.P.'s testimony that she had been diagnosed with PTSD after the alleged assault and deny Arias's request that any records related to that diagnosis be produced for examination denied him the opportunity to effectively cross-examine his accuser. The Confrontation Clause provides two types of protection for a criminal defendant: the right to physically confront his accuser and the right to conduct cross-examination. Pennsylvania v. Ritchie, 480 U.S. 39, 51 (2018) (plurality opinion) (citing Fensterer, 474 U.S. at 18-19 (1985)). We do not dispute the plurality view in Ritchie that the right of confrontation is a trial right and not a "constitutionally compelled rule of pretrial discovery." Id. at 52 (plurality opinion).

At the same time, we agree with Arias that K.P.'s testimony that she had received a post-assault diagnosis of PTSD tends to substantially bolster her accusation of a sexual assault. The clear implication of the testimony is that an objective medical professional found that she had suffered a traumatic event, and the timing of the diagnosis would tend to suggest to the jury that the assault was that event.

We likewise agree with Arias that the court's decision to permit questioning on other mental health issues, such as her pre-assault diagnosis of bipolar disorder, did not address the bolstering issue. The district court's response to Arias's objection reiterated that the defense would be able to question the victim's reliability on the basis of her mental health. But that theory of defense concerned whether, on the basis of acknowledged pre-existing mental health issues, the victim may have erred or otherwise made untrue statements regarding the assault (even if unknowingly). Arias's objections and motions for mistrial both at the time of the statement and the

following day made clear that the PTSD-diagnosis testimony presented difficulties different from K.P.'s pre-existing mental health issues. We conclude the district court erred by failing to sustain Arias's objection to the prosecutor's questioning that elicited testimony from K.P. about her post-assault PTSD diagnosis and after that testimony was introduced by failing to strike it. Without access to the records, Arias was unable to ascertain whether or not K.P.'s testimony that she had been diagnosed with PTSD was accurate or whether other traumatic incidents were related to the PTSD diagnosis—separate issues dealing with a distinct mental illness, and which correspondingly would raise alternative theories of defense. And if the records revealed that there was no diagnosis, then Arias was denied the opportunity to cross-examine on an issue which would have directly related to K.P.'s credibility in a case that rested entirely on conflicting testimony.

We emphasize that the district court committed no error in its pretrial rulings; however, once the questioning of K.P. opened the door to a line of questioning regarding her PTSD, the Confrontation Clause became implicated, because if the PTSD testimony was allowed to be weighed by the jury, the defendant had a constitutionally protected opportunity for effective cross-examination. Our ability to review and analyze Arias's Confrontation Clause claim is hampered by the fact that K.P.'s mental health records have never been produced. At this time we do not have the means for effective appellate review because no court has ever examined the records in question. As a result, we are unable to determine whether the failure to allow access to the records was a permissible limitation on cross-examination or whether Arias was denied access to information that might dramatically undermine the testimony of his accuser, the sole eyewitness to the assault. It is possible that the records contain no diagnosis of PTSD. It is possible that the records contain a diagnosis of PTSD related to these offenses. It is also possible that K.P. might have experienced other traumatic events in her life that led to the PTSD diagnosis. Without some review of the records, we cannot evaluate Arias's Confrontation Clause claim.

Accordingly, we think it appropriate to remand the case for the limited purpose of conducting an *in camera* review of the records to determine the appropriate course of action. In United States v. Lapsley, we remanded to the district court for the limited purpose of determining whether or not disclosure of the identity of a confidential informant was "essential to a fair determination of the case." 263 F.3d 839, 841 (8th Cir. 2001). In United States v. Garcia, we remanded the case so that the district court could review the PSRs of two cooperating witnesses *in camera* to determine whether the PSRs contained any Brady/Giglio information that would satisfy the materiality standard. 562 F.3d 947, 952 (8th Cir. 2009). A similar review is required in this case to evaluate whether the court's refusal to allow access to K.P.'s mental health records once K.P. testified she had been diagnosed with PTSD after being sexually assaulted by Arias was harmless.

We note that this is an unusual case in that we are unable to determine the prejudicial impact of evidence that was put before the jury. The government suggests that the limiting instruction that the court gave following the statement ensured no prejudice resulted. The limiting instruction did not inform the jury to entirely disregard the statement, but instead attempted to instruct the jury to give the statement little weight. The instruction therefore contradicted the ordinary rule that weighing the evidence "is the province of the jury"—a rule which the court explicitly re-instructed the jury on at the close of trial. See United States v. McDonald, 826 F.3d 1066, 1073 (8th Cir. 2016) (quoting United States v. White, 794 F.3d 913, 918 (8th Cir. 2015)). As a result, we are unable to rely on the principle that juries are presumed to follow the court's instructions.

On remand, the court is to review the records *in camera* to evaluate whether the failure to allow access to K.P.'s mental health records was harmless. If the court determines that Arias was not harmed by their exclusion, it may leave the records under seal to protect the witness's privacy.

-11-

## III.   Conclusion

We affirm the district court on all issues besides the motion for mistrial regarding the accusing witness's testimony that she received a diagnosis of PTSD following the assault. We remand the case to the district court for the limited purpose of conducting an *in camera* review of the records to determine whether the failure to allow access to K.P.'s mental health records was harmless. If the *in camera* review reveals no producible evidence and no possible Confrontation Clause violation exists, the district court will notify the parties of this conclusion. If the *in camera* review reveals that there may have been a violation of Arias's rights, the court may provide information to the parties for such further motions or briefing as is appropriate.

COLLOTON, Circuit Judge, dissenting.

The right to confrontation under the Sixth Amendment guarantees a defendant an opportunity for effective cross-examination. But it does not provide a right to compelled discovery of information from a third party that might assist the defendant in cross-examining a witness. The court's ruling that the Confrontation Clause required production of mental health records from witness K.P.'s psychotherapist for use in cross-examining K.P. appears to be unprecedented. In my view, the decision conflicts with the rationale of *Pennsylvania v. Ritchie*, 480 U.S. 39, 51-54 (1987) (plurality opinion), and decisions from several circuits. I conclude that the district court's rulings did not infringe on appellant Arias's constitutional right to confrontation, and I would affirm the judgment.

Decisions on the Confrontation Clause "fall into two broad categories: cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or by the trial court on the scope of cross-examination." *Delaware v. Fensterer*, 474 U.S. 15, 18 (1985) (per curiam). Neither category is implicated here.

The disputed issue concerns K.P.'s testimony that since Arias assaulted her, she had been diagnosed with anxiety and PTSD. The witness testified in open court, so Confrontation Clause cases in the first category involving out of court statements are inapposite. This case also does not fall into the second category: the district court "did not limit the scope or nature of defense counsel's cross-examination in any way." *Id*. at 19; *see Ritchie*, 480 U.S. at 53 (plurality opinion).

No ruling of the district court prevented counsel for Arias from questioning K.P. about her PTSD diagnosis. Counsel could have asked for the who, what, when, and where of the diagnosis to explore whether K.P. was credible in reporting it at trial. He could have probed K.P. about her life and mental health history in an effort to discern or suggest other possible causes of PTSD. If K.P. had successfully invoked a psychotherapist-patient privilege to prevent cross-examination, then Arias could have moved to strike her direct testimony about PTSD. *See United States v. Singer*, 785 F.2d 228, 242 (8th Cir. 1986). The district court expressly offered to consider a different limiting instruction about K.P.'s testimony, but defense counsel did not propose one. That counsel declined to pursue these avenues, of course, does not raise an issue under the Confrontation Clause.

It is not hard, moreover, to imagine sound strategic reasons for defense counsel to forego the questioning. The witness made only one brief mention of PTSD. The district court promptly instructed the jury that psychological symptoms diagnosed after the alleged incident have "extremely limited relevance to you all, if any." The government never mentioned PTSD in final arguments to the jury. Questions from the defense on the topic may well have amplified a fact that was otherwise unmentioned by the prosecution and diminished by the judge's instruction. As the district court observed in discussions with counsel, "a lot of things can happen in one's life that can produce anxiety and PTSD."

The majority concludes, however, that once K.P. testified about the diagnosis, the Confrontation Clause required the district court to compel production of K.P.'s treatment records from her psychotherapist and disclose them to Arias for use in cross-examining K.P. The Supreme Court in *Ritchie* addressed a similar claim that the Confrontation Clause entitled a defendant to compelled disclosure of a state agency file. The file included statements made by the defendant's daughter, who was a witness for the prosecution, and the defendant sought to access the file for use in cross-examining her. Only seven Justices voted on the merits, and a four-Justice plurality squarely rejected the defendant's argument under the Confrontation Clause.

Like Arias, the defendant in *Ritchie* argued that he could not effectively question a witness without the requested state agency file, because "he did not know which types of questions would best expose the weaknesses in her testimony." *Id.* at 51. The plurality dismissed his argument, saying that it would incorrectly "transform the Confrontation Clause into a constitutionally compelled rule of pretrial discovery." *Id.* at 52. Because "defense counsel was able to cross-examine all of the trial witnesses fully," *id*. at 54, the plurality ruled that the failure to compel disclosure of the agency file did not violate the Confrontation Clause. The court's conclusion, *ante*, at 10, that the district court's refusal to allow the defense access to K.P.'s mental health records was a "limitation on cross-examination" is contrary to *Ritchie*.

The majority, *ante*, at 9, seems to believe that the reasoning in *Ritchie* is limited to a request for *pretrial* discovery, and that the Confrontation Clause *does* create a constitutionally compelled rule of *in-trial* discovery. *Ritchie* does not support that conclusion. Of course, the defendant in *Ritchie* wanted the agency file during trial too; that is when he would have used it.

The state supreme court in *Ritchie* held that the defendant was entitled to pretrial discovery of the agency file, so the Supreme Court addressed that particular ruling, but the plurality's rationale applies equally to a request for compelled

-14-

discovery during trial. The *Ritchie* plurality explained that "the right to confrontation is a *trial* right, designed to prevent improper restrictions on *the types of questions that defense counsel may ask during cross-examination*." 480 U.S. at 52 (second emphasis added). The opinion thus concluded that "the Confrontation Clause was not violated by the withholding of the [agency] file; it *only would have been impermissible for the judge to have prevented Ritchie's lawyer from cross-examining the daughter*." *Id*. at 54 (emphasis added). In light of *Ritchie*, several circuits—without distinguishing between pretrial and in-trial discovery—have ruled that the Confrontation Clause does not guarantee a right to compelled discovery. *United States v. Fattah*, 914 F.3d 112, 179 (3d Cir. 2019); *United States v. Sardinas*, 386 F. App'x 927, 940-41 (11th Cir. 2010); *United States v. Hargrove*, 382 F. App'x 765, 774-75 (10th Cir. 2010); *Isaac v. Grider*, No. 98-6376, 2000 WL 571959, at *6-7 (6th Cir. May 4, 2000); *Tapia v. Tansy*, 926 F.2d 1554, 1559-60 (10th Cir. 1991); *United States v. Tarantino*, 846 F.2d 1384, 1415-16 (D.C. Cir. 1988) (per curiam). The majority's decision creates a stark conflict in the circuits.

The district court's rulings did not violate the Confrontation Clause, and there is thus no reason to remand for an inquiry into whether a purported error was harmless. I concur in the court's rejection of Arias's other contentions in Parts II.A and II.B of the opinion, and I would affirm the judgment.

———————————————