# United States Court of Appeals
## For the Eighth Circuit
_____

No. 21-1090
_____

United States of America

*Plaintiff - Appellee*

v.

Ira Alan Arias

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Northern
_____

Submitted: March 15, 2023
Filed: July 13, 2023
_____

Before SHEPHERD, ERICKSON, and GRASZ, Circuit Judges.
_____

ERICKSON, Circuit Judge.

On April 18, 2018, a jury convicted Ira Alan Arias of three counts of aggravated sexual abuse of a child, in violation of 18 U.S.C. §§ 1153 and 2241(c). The court imposed concurrent terms of imprisonment of 30 years on each count. Arias appealed, and this Court affirmed the district court on two issues and remanded for *in camera* review on a single issue—that is, whether the refusal to allow defense counsel access to the victim's mental health records was harmless in light of the

victim's testimony at trial that she was diagnosed with post-traumatic stress disorder ("PTSD") after the alleged sexual assault by Arias. See United States v. Arias, 936 F.3d 793 (8th Cir. 2019) ("Arias I"). The district court reviewed the records and concluded that not ordering the disclosure of the victim's mental health records was harmless, finding she received a PTSD diagnosis for the first time after Arias sexually assaulted her and her trial testimony was truthful. Upon *de novo* review of the claimed constitutional violation, we reverse, vacate the convictions, and remand for a new trial.

## I.    BACKGROUND

At trial, the government asserted that during the early morning hours of May 3, 2015, Arias, then 39 years old, sexually assaulted 14-year-old K.P. in a hotel room following Arias's sister's wedding reception. K.P. testified that during the assault her arm got stuck in the metal frame of the sofa bed, resulting in a scar on her biceps area. There were no other witnesses to the assault. Witnesses recounted the intoxicated condition of some of the adults and provided varying accounts of the timing of individuals coming and going from the hotel room throughout the morning until K.P. ultimately laid down to sleep on the sofa bed around 5:00-5:30 a.m. K.P.'s mother testified that she entered the room around 8:00 a.m. and observed K.P. sleeping on the sofa bed, and Arias and her mother's boyfriend sleeping on a king-sized bed. The family—K.P.'s mother, K.P.'s mother's boyfriend, K.P.'s two-year-old sister, K.P., and Arias—checked out of the hotel around noon and drove first to Arias's mother's residence to drop Arias off, and then drove home.

K.P. did not tell her mother or anyone else about the assault until three weeks later when she reported the incident to a cousin while the girls were coloring their hair. K.P.'s cousin suggested that she tell an aunt, which ultimately resulted in an investigation by law enforcement. The officer who took the initial report testified that K.P. would not look at him. When questioned about the incident, K.P. directed her cousin to tell the officer what K.P. told her cousin had happened.

Prior to trial, Arias sought to obtain K.P.'s mental health records from before and after the alleged date of the assault. Defense counsel believed that K.P. had received treatment for bipolar disorder and depression prior to the alleged sexual assault and had continued to receive mental health treatment after the alleged assault. The district court denied the requests. Then, as part of an *in limine* motion, the government moved to exclude references to K.P.'s mental health during Arias's case-in-chief and on cross-examination of any witness. The district court preliminarily granted the motion, ordering counsel to "refrain from any mention of the victim's possible depression and bipolar disorder during voir dire, opening statements, and witness testimony until this Court conducts a hearing outside of the jury with Defendant's proposed expert witness, Dewey Ertz Ed.D., regarding his opinions on the effects of mental health conditions on an individual's ability to perceive and recall events." Following a pretrial hearing, the district court ruled it intended:

> to allow some questioning of the alleged victim of whether she was, for instance, suffering a manic episode (or what her mood was) around the time of the alleged rape, whether she was on medication for bipolar disorder at the time, and what she told the nurse at the June 10 evaluation about her diagnosis and condition and mood at the time, and questions akin to those. Dr. Ertz probably will be allowed to testify generally about bipolar disorder, but not having ever apparently treated the alleged victim, cannot express any opinion as to whether she ever has been or whether she may have been somehow delusional at or around the time of the alleged rape.

K.P.'s grandmother was called to testify before K.P. took the stand. During cross-examination, defense counsel asked the grandmother whether she was aware that K.P. had been diagnosed with bipolar disorder. The district court sustained the government's objection as beyond the scope of direct examination. At a sidebar conference regarding whether to release the witness, the district court informed defense counsel that it was not going to allow every witness to be asked if the witness was aware K.P. had been diagnosed with bipolar disorder. Defense counsel indicated the grandmother was the only witness, and the foundation for the question

was based on statements the grandmother had given to an FBI agent. The district court required defense counsel to ascertain the foundation for the grandmother's knowledge before recalling her to testify. K.P.'s grandmother was never recalled as a witness.

Despite the *in limine* ruling limiting the testimony about K.P.'s mental health obtained by the prosecutor, during the government's case-in-chief, the prosecutor inquired of K.P. whether she had been diagnosed with any mental health conditions, both before and after the alleged assault occurred. Specifically, over defense counsel's objection, the prosecutor inquired:

> **Q**  Do you know - - I'm going to draw your attention to May 2013, okay? What took place in and around that time frame?
>
> **A**  My parents had gotten a divorce.
>
> **Q**  Okay. Did that have an impact on your health?
>
> **A**  Yes. I was diagnosed with depression.
>
> **Q**  Have you been diagnosed with anything else?
>
> **A**  Yes. After this incident had happened, not the divorce.
>
> **Defense Counsel:**  I'm going to object, Your Honor, to any testimony about after this incident happened, she is talking about this incident.
>
> **The Court:**  Overruled.
>
> **Defense Counsel:**  The defense was requesting and was denied records- -
>
> **The Court:**  All right. Stop it. All right. The question is whether she was diagnosed with any other incident. Go ahead.
>
> **Q**  So after your parents divorced, you were diagnosed with depression?

**A**     Yes.

**Q**     At that point in time, were you diagnosed with anything else other than depression?

**A**     No.

**Q**     Okay.  Since the assault, have you since been diagnosed with something else?

**A**     Yes.

   **Defense Counsel:** Objection.

   **The Court:** Overruled.

**Q**     What?

**A**     Anxiety and PTSD.

   **Defense counsel:**  Your Honor, I would like to make a motion out of the presence of the jury.

   **The Court:** Right. We'll get to that at a break.

   **Defense Counsel:** And I'm moving to strike the answer.

   **The Court:** All right. The Court will instruct you that psychologically - - psychological symptoms diagnosed post-incident, post-May of 2015, are extremely limited relevance to you all, if any. What the Court was expecting is something that had been diagnosed prior to May of 2015 as the answer.  But the Court does think that the testimony as given can stand.

   Go ahead and ask your next question . . .

During cross-examination, K.P. reaffirmed her earlier testimony that she had been diagnosed with depression but denied ever having been diagnosed with bipolar disorder.  She asserted that her doctor had said she had "traits" of bipolar disorder,

but she "d[id] not have a diagnosis of bipolar disorder." K.P. testified that prior to May of 2015, she had been hospitalized three times due to self-injurious behavior. One of the hospitalizations occurred one month before the alleged sexual assault. K.P. unequivocally denied being hospitalized for suicidal thoughts.

Following K.P.'s testimony, Arias's counsel renewed his objections to the testimony regarding K.P.'s mental health diagnoses and requested a mistrial, arguing (1) the testimony improperly bolstered the credibility of K.P.'s allegations; (2) the government opened the door by obtaining a ruling that the mental health records would not be released and then specifically asked about mental health diagnoses; and (3) K.P. waived the psychotherapist-patient privilege because of her testimony. Arias further argued that the prosecutor's conduct of objecting to the disclosure of K.P.'s mental health records and then directly eliciting testimony about K.P.'s post-assault diagnosis violated due process and the confrontation clause. Arias again renewed his request for production of the mental health records and requested that the district court inquire of K.P. as to who diagnosed her with anxiety, PTSD, and traits of bipolar disorder. Arias further requested a stay of the trial if the records could not be produced in a timely manner. The district court denied the requests, indicating it was standing by its previous rulings.

K.P.'s mental health, both before and after the alleged assault, remained a hotly contested issue throughout the proceedings. After the government rested, the prosecutor renewed his motion *in limine* to preclude defense expert, Dr. Ertz, from testifying about bipolar disorder, asserting there was no evidence of a bipolar disorder diagnosis. The district court denied the motion and permitted Dr. Ertz to testify about general aspects of bipolar disorder, including its features, such as symptoms and symptom patterns, diagnosis and treatment, relationship to other major disorders, and the impact on a person's ability to perceive and recall events. The prosecutor minimized any relevance or significance of Dr. Ertz's testimony, making clear for the jury that Dr. Ertz did not know or evaluate K.P., and that Dr. Ertz was not called to form opinions specific to the circumstances of this case.

Defense counsel was able to, through the testimony of a sexual assault nurse who examined K.P., inform the jury that the nurse's report stated that K.P.'s father had reported to the nurse that K.P. suffers from bipolar disorder and that K.P. had been hospitalized three times for depression with suicidal ideation. This was the limited evidence allowed to be presented to the jury in support of Arias's defense theory that K.P.'s mental health impacted her ability to perceive and recall experiences in her life. The prosecutor made strenuous efforts to discount and minimize this evidence, noting for the jury that: (1) the report was based on K.P.'s father's statements alone, and (2) K.P. never told the nurse she had bipolar disorder. The prosecutor then drove home his point that there was no evidence of a diagnosis of bipolar disorder during closing argument:

> . . . So what we have in my proof - - did we hide anything from you? She told you about her depression and what - - what resulted afterwards. She talked about her mental health.
>
> They put Dewey Ertz to talk about bipolar, generally. She is not even diagnosed with bipolar. They want you to think that there is something wrong with her, and this was all something that it wasn't, but it's - - *it's a fallacy, and I urge you to reject that*.

K.P.'s mental health records were not in the trial record. Without the records, in Arias I, this Court indicated that the confrontation clause had been implicated, but it was unable to review and analyze Arias's confrontation clause claim to determine whether Arias was harmed by the failure to allow access to K.P.'s mental health records. 936 F.3d at 799-800. The dissent asserted at that time that the district court's rulings did not violate the confrontation clause and there was no need to remand for harmless error review. Id. at 802 (J. Colloton, dissenting). The government's petition for rehearing was denied on December 4, 2019. On April 9, 2020, the government informed the Court that it had decided against pursuing certiorari review and moved for entry of the mandate.

Following our directions on remand, the district court obtained K.P.'s mental health records and issued an order. In that order, the district court stated:

> … Dr. Donald Farnsworth, a licensed psychologist at North Homes, wrote on the subject of this PTSD diagnosis:
>
> > [K.P.] was diagnosed with PTSD during the 2015 diagnostic assessment completed through NWMH.... She was reportedly sexually assaulted by her uncle in May, 2015. Substantiating a diagnosis of PTSD exclusively as a consequence of the sexual assault is difficult…. [K.P.] seems to be experiencing some possible trauma-like symptoms including re-experiencing the event, attempting to avoid it, and persistent increased arousal. As definitive diagnosis in the context of the current evaluation is difficult, I am forwarding a by-history diagnosis of PTSD but deferring definitive diagnosis related thereto to other providers. It should be easier to identify PTSD accurately after a period of stability.

The district court found that the referenced May 2015 sexual assault "by her uncle" referred to Arias, and that Dr. Farnsworth had rendered a diagnostic impression of PTSD connected to the sexual assault. The district court further found that other records supported the accuracy of K.P.'s testimony regarding a PTSD diagnosis.

One of Arias's claims on appeal pertains to the district court's use of ellipses in its order combined with the district court's continued refusal to disclose the records to the parties. Without the records, Arias asserts he was left to rely on the district court's summarization of the records and "an incomplete third-hand description of K.P.'s original PTSD diagnosis." After reviewing the briefing, we ordered the disclosure of the records to the parties and provided the parties an opportunity to submit supplemental briefs prior to oral argument.

Arias chief complaint about the district court's refusal to permit the disclosure of K.P.'s records has been that while it was important for the defense to be able to verify the PTSD diagnosis, it was equally (if not more) important to determine whether the diagnosis was related to the incident alleged in this case alone or whether

it was related to other traumatic events in K.P.'s life. See Arias, 936 F.3d at 799. The first passage regarding the PTSD diagnosis in K.P.'s mental health records omitted by the district court in its order stated: "[K.P.] has been recommended to trauma based individual therapy. She has experienced numerous, sometimes severe, stressors/traumas over the last six years, possibly even longer." The second passage from the mental health records omitted by the district court in its order stated: "[K.P.'s] behavior does not seem any more severe following that assault than it was before, psychiatrically hospitalized three times before the alleged assault and with five months elapsing after the alleged assault before her next psychiatric hospitalization. This is not to say [K.P.] is not experiencing a trauma reaction, only that trauma symptoms appear secondary to other pathology."

Arias contends on appeal that K.P.'s mental health records reveal a long history of numerous traumas and stressors unrelated to the alleged sexual assault undermining her trial testimony and raising questions about her credibility such that the constitution demands that he be afforded the opportunity to delve into K.P.'s mental health condition at trial once the government opened the door and the district court refused to strike the testimony. Arias maintains that the district court's refusal to order the disclosure of K.P.'s mental health records was not harmless beyond a reasonable doubt. The government asserts the district court's findings accurately reflect K.P.'s mental health records. The government asserted during oral argument that the records support a determination that the sole cause of K.P.'s PTSD was the sexual assault. The government further asserted at oral argument that Arias had "ample opportunity" to cross-examine and present expert testimony throughout trial, "everything was out on the table," and Arias was able to present a "complete defense" without K.P.'s mental health records.

## II. DISCUSSION

Generally, preserved evidentiary challenges are reviewed under the differential abuse of discretion standard. United States v. Davis, 859 F.3d 592, 597 (8th Cir. 2017). If the challenge implicates a constitutional right, our review is *de*

*novo*. Id. (quoting United States v. West, 829 F.3d 1013, 1017 (8th Cir. 2016)). A defendant establishes a violation of his confrontation clause rights by showing "that he was prevented from exposing facts to the jury from which they could reasonably make inferences about the reliability of the witness." United States v. Dempewolf, 817 F.2d 1318, 1321 (8th Cir. 1987) (citations omitted). A violation of a defendant's right to confrontation is subject to harmless error review. United States v. Campbell, 986 F.3d 782, 794 (8th Cir. 2021) (citation omitted).

The government acknowledges that this Court previously found the district court erred when it failed to sustain Arias's objection to the prosecutor's questioning about K.P.'s post-offense PTSD diagnosis and after the evidence was introduced when the court failed to strike it. Appellee's brief at 6, 7, & 12-13; Appellee's supplemental brief at i (summary) & 7; Arias, 936 F.3d at 799. The parties and the district court operated on remand as though the Court had found a confrontation clause violation and focused their attention on whether the refusal to produce K.P.'s mental health records was harmless. Neither party asserted, nor did the district court find, there was no confrontation clause violation. Under the law-of-the-case doctrine, our role in this appeal does not encompass review or re-examination of an issue decided in a prior appeal. See United States v. Castellanos, 608 F.3d 1010, 1016 (8th Cir. 2010) (stating that when an appellate court remands a case to the district court, all issues decided by the appellate court become law of the case, and the district court on remand is to adhere to any limitations imposed by the appellate court); United States v. Callaway, 972 F.2d 904, 905 (8th Cir. 1992) (per curiam) (declining to review issue under the law-of-the-case doctrine and noting the decision in the prior appeal is followed in later proceedings unless "substantially different evidence" is introduced or the prior decision is "clearly erroneous and works manifest injustice").

The narrow issue on appeal before us—which, consistent with Arias I, is the only one the district court decided and the parties have briefed—is whether the district court erred in determining the refusal to require the disclosure of K.P.'s mental health records was harmless. Without a confrontation clause violation,

-10-

harmless error analysis would be gratuitous. In conducting the harmless error analysis, we note that "the heart of the [Confrontation] Clause is a defendant's opportunity to cross-examine." Id. (citing Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986)). The United States Supreme Court has enumerated several factors to be considered in determining whether a confrontation violation is harmless, including:

> the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Van Arsdall, 475 U.S. at 684.

At the outset, the district court did not clearly err when it found the mental health records confirm the accuracy of K.P.'s testimony regarding the existence or timing of her PTSD diagnosis. But assessment of whether the confrontation clause violation is harmless does not end there. Once evidence was admitted about K.P.'s pre- and post-offense mental health diagnoses, Arias should have been given an opportunity to explore the veracity of that testimony as well as the chance to refute the unmistakable impression left with the jury that the underlying cause for the PTSD diagnosis was the alleged sexual assault. See United States v. Bordeaux, 400 F.3d 548, 558 (8th Cir. 2005) (noting the Constitution guarantees every criminal defendant a fair trial, which includes the right to introduce evidence in his own defense with restrictions that may not be arbitrary or disproportionate to the purposes they are designed to serve). Thus, the error was not harmless. Arias sought to review K.P.'s records to assess not only the truth of the diagnosis but also whether other events may have contributed to the diagnosis. Having conducted an independent review of the records, the prosecutor's proclamation during oral argument that the alleged sexual assault was the "sole cause" of the PTSD diagnosis is belied by the records. The records make plain that K.P.'s mental health history was far more complicated than the selective snippets she disclosed at trial. K.P.'s testimony left an incomplete and in many ways inaccurate portrayal of her condition that was

-11-

allowed to go uncorrected because the court refused to require the production of records once the government presented evidence, over defense counsel's objections, of K.P.'s mental health, both before and after the incident.

It is not arguable that the defense was not surprised by the manner in which this evidence was developed and presented. Notably, the district court granted the government's motion *in limine* to limit the testimony regarding K.P.'s mental health. This sent a clear message to defense counsel that his ability to present a defense based on K.P.'s mental health regarding her ability to perceive and recall was impaired. The court's pretrial rulings made plain that defense counsel was limited in his presentation of evidence on this topic to: (1) bipolar disorder generally; (2) whether K.P. was suffering a manic episode (or what her mood was) around the time of the alleged sexual assault; (3) whether K.P. was on medication for bipolar disorder; and (4) what K.P. told a nurse about her diagnosis, condition, and mood.

Despite forcefully advocating that the defense be limited as the court unambiguously ordered, the prosecutor disregarded the court's order *in limine* and directly and intentionally elicited testimony from K.P. about her mental health diagnoses after the alleged sexual assault. The prosecutor's inquiry had the effect of bolstering K.P.'s version of events and inducing jurors to draw an inference connecting K.P.'s post-offense diagnoses of anxiety and PTSD to the alleged sexual assault. The misinformation was never corrected during trial nor was defense counsel afforded an opportunity to investigate this aspect of K.P.'s testimony, a significant and material part of his defense. Despite defense counsel's objections and motion to strike, the evidence was allowed to stand. No curative instruction was given limiting the evidence. Instead, the district court instructed the jurors that they could assess relevance, if any, of the evidence and specifically informed the jurors that "the testimony as given can stand."

The prosecutor's questioning of K.P. and the district court's rulings resulted in an incomplete and inaccurate picture of K.P.'s mental health, depriving Arias of his constitutional right to introduce evidence in favor of his defense. This violation

was not harmless. Moreover, the record does not support the prosecutor's assertions that "everything was out on the table" and Arias was able to present a "complete defense" despite not having access to K.P.'s mental health records.

First, K.P. testified that she had not been psychiatrically hospitalized for suicidal ideations. This testimony is flatly inconsistent with the records. In reviewing the June 2016 diagnostic assessment/psychological evaluation completed by Dr. Farnsworth, which the district court quoted portions of in its order, Dr. Farnsworth noted that K.P. had been psychiatrically hospitalized six times—four times before the alleged assault for self-injurious behavior, aggression, suicidal ideations, and suicide attempts. Records from the Richard P. Stadter Psychiatric Center confirm that K.P.'s psychiatric hospitalization in October 2014 materialized when she presented to the emergency room with suicidal ideation and a plan to overdose on pills. Her admission in December 2014 took place after K.P. told her father that there "are times I wish I were dead" and she was cutting herself with razor blades. In October 2015, K.P.'s father found a suicide note. Worried that she would act upon the intentions in the note, her father transported K.P. to the hospital for an evaluation. During the psychiatric evaluation, K.P.'s father reported K.P. "constantly lies" and is "out of control." At this time, K.P. denied a history of abuse. None of this information was ascertainable by defense counsel nor presented to the jury.

Second, during her trial testimony, K.P. lied when she testified that she had not been diagnosed with bipolar disorder, isolated her diagnosis of PTSD (and anxiety), and omitted other potentially significant mental health diagnoses that could have affected the weight and credibility jurors assigned to her testimony. Contrary to K.P.'s testimony, Dr. Farnsworth's evaluation noted that K.P. had been diagnosed with various mental health conditions, ranging in severity from adjustment disorder with anxiety and depressed mood on one end of the spectrum to bipolar with severe major depressive disorder on the other end of the spectrum. Dr. Farnsworth also noted K.P. had been diagnosed with oppositional defiant disorder, recounting a history of K.P. "losing her temper, irritability, anger/resentfulness, arguing with

authority, defying requests, deliberately annoying others, blaming others for her mistakes, and spitefulness/vindic[tiveness]." The evaluation also stated that it appeared "[K.P.] has bullied/threatened others at school, been physically cruel to people, destroyed property, lied to obtain goods and avoid obligations, been truant from school, and stayed out past curfew despite parental prohibitions." Dr. Farnsworth expressed concern that at least some of the behavioral symptoms were "an expected manifestation of what appears to be familial/environmental dysfunction combined with emotional instability resulting from personality pathology."

Dr. Farnsworth diagnosed K.P. with borderline personality disorder, generalized anxiety disorder, other specified depressive disorder, PTSD (by-history), and other specified disruptive, impulse-control, and conduct disorder. In an addendum, Dr. Farnsworth noted that after the evaluation was completed and K.P. was discharged, K.P. attempted to recant certain statements she made about her parents to Dr. Farnsworth during the clinical interview. Dr. Farnsworth declined to alter the report, responding that he was not surprised K.P. was recanting her statements after being confronted by her parents given K.P.'s personality disorder, which increased K.P.'s sensitivity to negative interpersonal feedback. None of this information, which could have raised doubts in a reasonable juror's mind about K.P.'s testimony, was ascertainable by defense counsel nor presented to the jury.

Third, the mental health records document other stressors in K.P.'s life that contributed to her mental health issues—something that defense counsel sought to investigate and was asserted as a basis for the disclosure requests. During her testimony, K.P. referenced only her parent's divorce and the alleged sexual assault as circumstances that impacted her mental health. K.P.'s records identify a number of other stressors in her life that could cause a reasonable juror to question whether the alleged assault was a precipitating factor for her PTSD diagnosis. For instance, at age 14 and while hospitalized on Christmas Day, K.P.'s father, who had been raising her since she was two years old, told K.P. that he was not her biological father. Dr. Farnsworth's evaluation indicated there was a "documented" history of

parental separation or divorce, emotional abuse, sexual abuse, emotional neglect, and physical neglect, and a "reported" history of household violence and household substance abuse. None of this information was ascertainable by defense counsel nor presented to the jury.

Lastly, K.P. has previously reported that she experienced visual hallucinations. During a December 2014 psychiatric evaluation, which was only five months before the alleged sexual assault, K.P. reported visual hallucinations, seeing things on her walls, and believed somebody was calling her name. Despite the documented hallucinations, none of this information was ascertainable by defense counsel nor presented to the jury.

K.P. was the only witness testifying as to the facts surrounding the alleged sexual assault. Arias's theory of defense was that K.P.'s mental health conditions had an impact on her ability to perceive and recall events. Contrary to the government's assertion, due to the district court's rulings, Arias was not able to meaningfully present his defense. K.P.'s mental health records tell a different story than she told the jury. K.P.'s mental health records do not support the prosecutor's assertions that at trial "everything was on the table" and accessible by defense counsel and presented to the jury. And the records cast doubt on the prosecutor's closing argument that defense counsel "want you to think that there is something wrong with her, and this was all something that it wasn't, but it's - - it's a fallacy." K.P.'s testimony and the prosecutor's arguments went unrefuted because Arias was deprived access to the records, which contained both impeachment evidence and evidence that would have allowed Arias to develop his defense beyond Dr. Ertz's general testimony regarding the effects bipolar disorder may have on an individual.

To summarize, K.P.'s mental health records contain evidence indicating K.P.'s behavior was not more severe after the alleged sexual assault than it was before. K.P. has experienced a number of traumatic events in her life that could have contributed to her mental health issues. K.P.'s post-offense diagnosis of PTSD is not necessarily connected to the alleged sexual assault by Arias. And K.P. has been

-15-

diagnosed with other mental health conditions that she omitted during her testimony that could cause a reasonable juror to have doubts about K.P.'s reliability and credibility, particularly where, here, the evidence to support the government's charges turned on K.P.'s testimony. There was no other witness to the crime and no evidence corroborating that a sexual assault took place during the early morning hours of May 3, 2015. There were inconsistencies between K.P.'s trial testimony and previous statements she had given. K.P.'s testimony was central and crucial to the prosecution's case. Once the district court admitted evidence of K.P.'s mental health diagnoses, the limitation on Arias's ability to discover K.P.'s true and accurate mental health history violated his constitutionally protected right of confrontation and that error was not harmless. See Dempewolf, 817 F.2d at 1321 (stating a confrontation clause violation occurs when a defendant was prevented from exposing facts to the jury from which jurors could reasonably make inferences about the reliability of the witness).

We think this case is different than United States v. Long Pumpkin, 56 F.4th 604 (8th Cir. 2022), for several reasons. In Long Pumpkin, the only limitation on questioning concerned drug use by two witnesses. Id. at 608. The Court noted there was no limitation on "substantive matters about which the witness testified on direct examination." Id. at 609. In other words, defense counsel was not denied the opportunity to inquire about matters the prosecutor elicited during direct examination. Defense counsel in Long Pumpkin were permitted to elicit limited testimony establishing the witnesses were methamphetamine users, but the defendants declined to take advantage of the opportunity. Id. Here, the sole witness to the crime was the victim, K.P. Despite the district court's *in limine* rulings which the prosecutor specifically sought, the prosecutor opened the door to K.P.'s condition by directly and intentionally eliciting testimony about K.P.'s mental health. Unlike in Long Pumpkin, there was no opportunity for Arias to present "materially equivalent information" regarding the sole witness's veracity or credibility. Due to the district court's rulings, Arias' defense was reduced to general testimony about bipolar disorder—a condition K.P. erroneously denied being diagnosed with and evidence the prosecutor effectively minimized because it was

-16-

general to bipolar disorder and not specific or relevant to the facts of this case. Because the district court in this case limited the investigation and questioning about K.P.'s mental health while allowing the government's evidence on direct examination to go unrefuted and uncorrected, the facts here are distinguishable from Long Pumpkin.

We conclude that the district court's refusal to require the production of K.P.'s mental health records and its limitations on cross-examination after the government opened the door about K.P.'s mental health diagnoses was not harmless beyond a reasonable doubt. See Wealot v. Armontrout, 948 F.2d 497, 501 (8th Cir. 1991) (concluding the State violated the defendant's constitutionally protected right of cross-examination and the error was not harmless in a rape prosecution where the trial court did not permit defense counsel to inquire into the potential bias of the complaining witness or to demonstrate the falsity of her testimony).

## III.   CONCLUSION

For the foregoing reasons, we reverse the district court's determination that its refusal to require the disclosure of K.P.'s mental health records was harmless. Because Arias has demonstrated a violation of his constitutional rights that was not harmless, we vacate his convictions and remand for a new trial.

SHEPHERD, Circuit Judge, dissenting.

This Court has not previously decided whether Arias's rights under the Confrontation Clause were violated when the district court refused to require the government to produce K.P.'s mental health records. Indeed, in Arias's first appeal this Court stated:

> Our ability to review and analyze Arias's Confrontation Clause claim is hampered by the fact that K.P.'s mental health records have never been produced. At this time *we do not have the means for effective appellate review* because no court has ever examined the records in

-17-

question.  As a result, *we are unable to determine whether the failure to allow access to the records was a permissible limitation on cross-examination* or whether Arias was denied access to information that might dramatically undermine the testimony of his accuser, the sole eyewitness to the assault.

United States v. Arias, 936 F.3d 793, 799-800 (8th Cir. 2019) (emphasis added).  The Court went on to explicitly conclude that, "Without some review of the records, *we cannot evaluate Arias's Confrontation Clause claim*."  Id. at 800 (emphasis added).  And although the Court remanded for the "limited purpose" of determining harmlessness, it also instructed the district court to notify the parties "[if] the *in camera* review reveals no producible evidence and no possible Confrontation Clause violation."  Id.

For the reasons articulated by Judge Colloton in Arias's first appeal, I respectfully dissent from the majority's conclusion that Arias's rights under the Confrontation Clause were indeed violated.  See id. at 801-02 (Colloton, J., dissenting); see also Pennsylvania v. Ritchie, 480 U.S. 39, 52 (1987) (plurality opinion) (stating that the Confrontation Clause is not "a constitutionally compelled rule of pretrial discovery" but instead "prevent[s] improper restrictions on the types of questions that defense counsel may ask during cross-examination").  Because there was no Confrontation Clause violation, I would not reach the harmless-error analysis.

_____