UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-1626

_____

UNITED STATES OF AMERICA

(Appellee)

v.

JOHN WILLIAM PEDEN

(Defendant-Appellant)

_____
Appeal from the United States District Court
for the Northern District of Mississippi
_____

( May 12, 1992 )

Before POLITZ, Chief Judge, GARZA, Reynaldo G., and WIENER, Circuit
Judges.

GARZA, Reynaldo G., Circuit Judge:

Defendant appeals his conviction by a jury of kidnapping,
sexual abuse, and sexual abuse of a minor. For the reasons stated
below, we affirm Defendant's conviction in all respects.


PROCEDURAL HISTORY

Appellant John William "Buddy" Peden, age 37, was charged in
a three count indictment with kidnapping, sexual abuse and sexual

1

abuse of a minor, in violation of 18 U.S.C. §§ 1241, 2242 and 2243. At arraignment, Peden entered a plea of not guilty to all charges. Peden filed a Motion to Dismiss the kidnapping count, which the district court denied at the close of the Government's case. Peden filed Motions in limine seeking the exclusion of evidence of prior convictions and misconduct, which the district court deferred until trial. The district court ultimately held that Peden's prior Tennessee conviction for sexual abuse of a girl under age 13 was admissible under Federal Rules of Evidence 404(b) and 609. Peden also filed a Motion for an Order requesting the district court to subpoena the Youth Court and Welfare Department records of the alleged victim for purposes of an in camera review by the district court and for authority for Peden's expert to review the same records. The district court granted this Motion.

After a three day trial, a jury convicted Peden on all three counts. He filed Motions for a New Trial and Judgments of Acquittal which the district court denied.

Based on Peden's criminal history, the court classified him under the maximum Category VI with a total offense level of 39. The district court sentenced Peden to 32 years imprisonment on the kidnapping count, 20 years on the sex abuse count, and 5 years on the sexual abuse of a minor count, to run concurrently.

FACTS

On Friday, September 21, 1990, Peden, who was living in a trailer park in Guntown, Mississippi with his sister, Cindy

2

Jackson, invited four young girls who lived in the area for an evening of skating at a local rink. The girls were Peden's nine year old niece, a neighbor, also age nine, a six year old who was celebrating her birthday, and the victim, M.N.,[1] who had turned 15 the previous Sunday.

M.N. stood four feet ten inches tall and weighed 107 pounds. While Peden claimed that he thought that she was 16, he admitted at trial that she did not look that old. M.N., who had a history of neglect by her alcoholic mother, was under the foster care of a distant relative, Earl Coggins, and his wife.[2] Coggins owned the trailer park where Peden's sister resided.

Peden had grown up in the area, but had lived away for several years.[3] Peden moved in with his sister two months before the incident in question. For a few weeks before the skating party, Coggins had employed Peden on a roofing job at the trailer park. During that time, Peden developed a friendly rapport with M.N.[4]

On the afternoon of Friday, September 21, Coggins at first refused to let M.N. attend the skating party. Peden, however, telephoned Coggins and convinced him to allow M.N. to go. Upon arrival at the rink, the younger girls went in, but M.N. remained

---

[1] To protect the victim's privacy, we refer to her by the initials "M.N."

[2] Appellant's expert psychiatric witness testified that M.N. had been sexually abused as a young child.

[3] The jury was not told that part of his absence was spent in the Mississippi penitentiary for drug distribution.

[4] Peden claims that M.N. told him that her 15th birthday was in fact her 16th.

behind with Peden to search for money she had lost.[5]

About an hour later, Peden invited M.N. to accompany him to a Wendy's fast food establishment.  M.N. accepted, despite the fact that her father had admonished her not to leave the rink.  When they reached Wendy's, Peden did not stop the vehicle.  When M.N. asked why they were not stopping, Peden answered "what do you think I planned this for?"[6]  Peden then drove M.N. up to an area of federal land called the Natchez Trace.  According to M.N., he grabbed her roughly by the wrists, ordered her to remove her pants and underwear, climb on top of him and have sex with him.[7]  After ejaculating inside her, Peden drove M.N. back to the rink.  They had been gone about half an hour.

M.N. did not speak of the rape to anyone for a few days.  In the meantime, Coggins discovered that Peden was having an affair with Arlinda Collier, Coggins' stepson's wife.  M.N. overheard Coggins telling his wife, Shirley, about it.  M.N. began crying and related the facts to Coggins.[8]  On October 5th, Coggins reported the rape to M.N.'s caseworker, Myrtle Clark.

---

[5]     According to Peden, they kissed and petted for ten minutes.

[6]     According to Peden, they did not stop because M.N. said that she was not hungry.

[7]     Peden admits to having sex with M.N., but claims it was upon her initiative.

[8]     The testimony of M.N., who claimed not to have been at home during the phone call, conflicts with the government's version of the events in this respect.

ANALYSIS

Peden argues that the district court erred in admitting evidence of a prior conviction and in refusing to admit into evidence M.N.'s Welfare and Youth Court records. Moreover, Peden contends that the district court erred in refusing to quash the kidnapping count. Finally, Peden maintains that the evidence was insufficient to convict and that therefore the district court erred in denying his Motions to Acquit. We are unconvinced by Peden's arguments.

I. The District Court did not Err in Admitting Evidence of Peden's Prior Tennessee Conviction of Aggravated Sexual Battery.

Peden was convicted on May 1, 1990 of aggravated sexual assault in Tennessee. The district court allowed the conviction in as evidence under Section 404(b) of the Federal Rule of Evidence, which states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The conviction arose from a confession that Peden had fondled a child under the age of thirteen who had been briefly left in his care by a girlfriend. In United States v. Beechum, 582 F.2d 898 (5th Cir. 1978) (en banc), cert. denied, 440 U.S. 920 (1979), we dealt exhaustively with the complicated problem of admission of extrinsic evidence under this Rule. The drafters of Rule 404(b) recognized, as common law courts have long recognized, that

admission of prior wrongful acts simply to show the defendant's bad character, notwithstanding that one possessed of a bad character is more likely to commit a crime than one who is not, is likely to prejudice the jury and blind it to the real issue of whether the defendant is guilty of the crime charged.  For example, the jury may feel unsure that the government has proven its case, but decide that the defendant is an evil person who belongs in prison anyway. The jury may wish to punish the defendant for the prior act, even if they are unconvinced that he committed the act charged. Moreover, the jury may be unconvinced that the defendant committed either act, but that he more than likely committed at least one of them and should be punished.

Due to the dangers of admission of evidence of prior wrongs, courts must engage in a two-step process:  (1) The extrinsic act evidence must be relevant to an issue other than the defendant's character, and (2) the evidence must possess probative value that is not substantially outweighed by the danger it presents of "unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence."  Beechum, 582 F.2d at 911.

Peden argues that the prior conviction is irrelevant, despite its close proximity in time to the charged offense.  According to Section 39-13-504(a) of the Tennessee Code, "[a]ggravated sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the circumstances listed in § 39-13-502(a)."  While some of the listed

circumstances involve force and the threat thereof, one of those circumstances is that "[t]he victim is less than thirteen (13) years of age."

Peden argues that this is not relevant to his intent as to the charge under 18 U.S.C. § 2242[9] because, Peden argues, that statute requires the use of force or the threat thereof. We do not agree, as in the Tennessee statute, that the federal statute includes provisions regarding those incapable of resisting or those incapable of appraising the nature of the act.

In addition, Peden argues that the district court improperly admitted the Tennessee conviction in that the government claimed that it proffered the evidence to establish Peden's intent notwithstanding that Peden admitted to having sex with M.N. Peden's argument lacks merit. The Tennessee conviction goes to his

---

[9]    According to this statute:

Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, knowingly--

(1) causes another person to engage in a sexual act by threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnaping); or

(2) engages in a sexual act with another person if that other person is--

(A) incapable of appraising the nature of the conduct; or

(b) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act.
...

7

intent to take advantage of one incapable of resisting or unable to appreciate the act, as well as his knowledge that young children are easily victimized. We note that family friends testified that M.N. was a "slow" child who acted young for her age. Finally, we note the similarity between the Tennessee facts and those of the case before us. In both cases, Peden had worked to gain the trust of those who left him in charge of young girls. In both cases, one of the girls present was having a birthday.

Regarding the second part of the <u>Beechum</u> test, we do not believe that the district court abused its discretion in determining that the probative value of the evidence outweighed its potentially prejudicial effect. In reviewing Rule 403 findings, we give "great deference to the court's informed judgment and will reverse only after a clear showing of prejudicial abuse of discretion." <u>United States v. Rocha</u>, 916 F.2d 219, 241 (5th Cir. 1990), <u>cert.</u> <u>denied sub nom Hinojosa v. United States</u>, 111 S.Ct. 2057 (1991).

We have noted that the danger that the jury will punish the defendant for the extrinsic offense rather than judge his guilt or innocence of the charged offense "is particularly great where ... the extrinsic activity was not the subject of a conviction..." <u>Beechum</u>, 582 F.2d at 914. The danger is not so great where, as here, there was a conviction and the jury is less likely to take it upon themselves to punish the accused for the extrinsic act.

Finally, Peden claims that the district court erred by failing to make an on-the-record evaluation of its findings on the question

8

of the balance between the probative value of the extrinsic evidence as opposed to its potentially prejudicial effect as required by <u>United States v. Robinson</u>, 700 F.2d 205, 213 (5th Cir. 1983). This contention is without merit. The district court made explicit findings, citing cases from both this and other Circuits, as well as law review commentary. Record vols. IV, 270-73; V, 472. No remand is necessary for us to determine that the district court did not abuse its discretion.

II. <u>The District Court did not Err in Refusing to Admit into Evidence M.N.'s Youth Court and Welfare Files</u>.

Prior to trial, Peden moved for <u>in camera</u> review of M.N.'s records on file with the Mississippi Department of Human Services. In response, the district court stated:

> I have examined carefully the records from the Lee County Welfare Department and the Lee County Youth Court. I'm of the opinion that there's nothing in these records that's admissible evidence; however, I feel that the expert's for both the government and the defendant should have access to those Youth Court records. Now, that's something that's governed very strictly by state law, the accessibility to those records. And I want to see that the privileges are adhered to as much as possible, at the same time be fair to both parties. What I suggest is that you have your experts just come here in my chambers and I will make these Youth Court records available to both of them here in chambers. Because I think that there are some documents in that file that are categorized as the type of data or information that experts in this type of case might rely upon, although I don't think there's anything that's admissible under Rule -- particularly under Rule 412 of the Federal Rules of Evidence. However, I feel that these experts should have access to this information.

Peden claims that the records should have been admitted because it "is evident from the record [that] the District Court

found information which was clearly material to the defense of the charges." Defendant's Brief at 22. We cannot read anything of the kind into the district court's statement. The statement indicates quite the opposite.

Moreover, Peden's expert reviewed the file and reported its contents to Peden's counsel, who made use of it in cross-examination. Peden's counsel never, however, made a proffer of evidence under Rule 412(c). Even now, Peden does not indicate what parts of the records his expert indicated would be relevant and therefore possibly admissible under Rule 412. We conclude that the district court did not abuse its discretion in denying admissibility of these highly sensitive records. See United States v. Acosta, 763 F.2d 671, 693 (5th Cir.), cert. denied sub nom Weempe v. United States, 474 U.S. 863 (1985).


III.   The District Court did not Err in Refusing to Quash the Kidnapping Count.

Peden argues that the district court erred as a matter of law in denying his motion to quash the kidnapping count under 18 U.S.C.A. § 1201. Peden relies on Government of Virgin Islands v. Berry, 604 F.2d 221 (3d Cir. 1979), in which the Third Circuit, in an opinion construing the Virgin Islands kidnapping statute, which is similar to the statute at issue, reversed defendants' conviction on the kidnapping count because what really occurred was simply a robbery. In that case, friends of the victim who had given him marijuana, which he had sold, demanded that he return the sale

10

proceeds.  When the victim could not return all of the money, they drove him onto a secluded road, telling him that they were calling upon another friend and would drive him home afterwards.  Instead, they stopped at a beach, whereupon the "kidnappers" told the victim to remove his clothes and go for a swim.  The kidnappers then drove off with the victim's clothes and wallet, telling him that if he did not have the money by the next morning, he would be killed. Id. at 222-23.

As the Third Circuit noted, both the Virgin Islands statute and the federal statute at issue make it unlawful to "inveigle" someone to travel for the inveigler's unlawful purpose.[10]  Taken literally, the victim in Berry was "inveigled" because he was taken to the beach on false pretenses.  Id. at 225.  The victim, however, was not aware that he was detained until about the time that the robbery took place.[11]  The Court found that four factors should be used in determining whether kidnapping should be included above and beyond the offense which was the object of said "kidnapping." These factors are:

_____

[10]   18 U.S.C.A. § 1201 provides:

(a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, ... when -- (2) any such act against the person is done within the special maritime and territorial jurisdiction of the United States; ... shall be punished by imprisonment for any term of years or for life.

[11]   But see United States v. Hughes, 716 F.2d 234, 239 (4th Cir. 1983)("a kidnapping victim who accepted a ride from someone who misled her into believing that she would be taken to her desired destination was 'inveigled' or 'decoyed' within the meaning of the federal kidnapping statute.").

11

> (1) The duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.

Id. at 227.

We find it unnecessary to decide whether to adopt the Berry test for we find that, even if we did adopt it, the kidnapping charge in the case before us survives the test. Unlike the facts of Berry, M.N. was aware that Peden was not taking her to Wendy's for some time prior to the actual rape. Moreover, the asportation and detention went beyond that necessarily inherent in rape. As the government stated in oral argument, there would be no kidnapping if, for example, Peden had merely taken M.N. off to the bathroom at the skating rink and had raped her there. Finally, M.N. testified that she was in great fear of harm from Peden after the rape. She stated that after he raped her, he opened the glove compartment in an unsuccessful search for "something bad." We certainly cannot say that M.N.'s fear was unreasonable.

We do not mean to discount the danger of multiplicity. Courts must always be careful to avoid convicting a defendant for a crime which is in effect a necessary element of another crime for which the defendant has also been convicted. See United States v. Lemons, 941 F.2d 309 (5th Cir. 1991).[12] For the reasons stated

---

[12] Courts must also avoid multiplicity in sentencing. For a particularly well reasoned case in this regard, see United States v. Mikalajunas, 936 F.2d 153 (2d Cir. 1991)(district court erred in enhancing offense level on the basis that the defendant restrained the victim while stabbing him, since stabbing

12

above, however, we do not believe that such is the case here.

IV.   The Evidence Sufficed to Convict Peden on All Counts.

Peden, claiming that the evidence was insufficient for a rational jury to convict him, argues that the district court erred denying his motions to acquit on all counts.  We find his arguments completely lacking in merit.

When presented with a claim that the evidence did not suffice to support a criminal conviction, we review the verdict of the jury to determine whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the conviction beyond a reasonable doubt.  United States v. Carrion-Caliz, 944 F.2d 220, 224 (5th Cir. 1991), cert. denied, 118 L.Ed.2d 217 (1992).

Regarding the kidnapping charge, M.N. testified that she would not have left the skating rink with Peden had she known that they were not going to Wendy's.  She testified that she felt that she could not get away.  As Peden himself admits to having sex with her, the jury could certainly have found that sexual gratification was Peden's object in the asportation.

Regarding the charge of sexual abuse, there is no question that Peden had sex with M.N.  M.N. testified that she was afraid of Peden, which the jury could have easily believed as Peden is a large man.  Moreover, the jury was justified in believing the testimony of the prosecution's expert witness to the effect that

necessarily involves some restraint).

13

M.N. was incapable of declining or communicating unwillingness to Peden's forceful requests even if she were unwilling. Peden claims that M.N. was a mature girl who could take care of herself, contending that this is shown by Coggins' willingness to allow her to go on interstate trips with truck drivers. What Coggins in fact stated was that he let M.N. travel on a couple of occasions with his brother-in-law. Moreover, Peden claims that he is exonerated because M.N. stated that she felt partly responsible for the rape. Despite pressing on cross-examination, however, Peden's counsel failed to elicit any reason why M.N. felt responsible. The jury was certainly justified in concluding that guilt feelings experienced by a violated teenager do not prove that the victim was responsible for the crime.

Finally, in regards to the charge of sexual abuse of a minor, Peden argues that the jury could not have reasonably believed that Peden believed that M.N. was younger than 16. This contention is frivolous. M.N. denied Peden's claim that she told him that she was 16; even Peden admitted that M.N. did not look 16.

## CONCLUSIONS

We conclude that the district court properly admitted evidence of the Tennessee conviction and did not abuse its discretion in refusing to admit the Welfare and Youth Court records. Nor did the district court err in refusing to quash the kidnapping count or in denying Peden's Motions to Acquit. Therefore, the judgment of the district court is

14

AFFIRMED.