# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3795
_____

United States of America

*Plaintiff - Appellee*

v.

Nkajlo Vangh

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: November 16, 2020
Filed: March 15, 2021
_____

Before SHEPHERD, STRAS, and KOBES, Circuit Judges.
_____

STRAS, Circuit Judge.

Despite having served less than two years of a 90-month prison sentence, Nkajlo Vangh moved for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A).

Vangh challenges the district court's[1] decision to deny his motion without first giving him an evidentiary hearing. We affirm.

## I.

While serving as president and chairman of the board of directors of the Hmong American Federal Credit Union in St. Paul, Minnesota, Vangh committed fraud. He and his wife diverted over $2 million to their own benefit. Eventually, the credit union closed.

These actions led the government to charge Vangh with bank fraud. *See* 18 U.S.C. §§ 2, 1344. After pleading guilty, he received a 90-month prison sentence, well below the recommended Sentencing Guidelines range of 121 to 151 months. Due to Vangh's serious health issues, the district court varied downward. Today, Vangh is serving his sentence at the Federal Medical Center in Rochester, Minnesota, where he receives regular care at the Mayo Clinic.

During Vangh's time in prison, his health has not improved. In addition to being legally blind and deaf, he suffers from dizziness, heart issues, diabetes, glaucoma, kidney disease, hyperkalemia, hypotension, severe nasal dryness, and chronic neck pain. He also has a history of cancer.

For these reasons, he seeks compassionate release—a pursuit that began with promise. Indeed, the warden at his facility initially approved the request and sent it along to the Federal Bureau of Prisons's Office of General Counsel. *See* 18 U.S.C. § 3582(c)(1)(A). It then hit a roadblock, however, when the agency's general counsel disagreed with the warden's recommendation and refused to file a motion on Vangh's behalf.

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

Vangh tried filing his own motion for compassionate release, but it met a similar fate. The district court recognized that Vangh suffered from "serious health issues," but nevertheless denied relief on the ground that his medical needs were currently being met.

## II.

Since the passage of the First Step Act in 2018, prisoners can bring compassionate-release motions on their own, once they have exhausted their administrative remedies. *See* Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018) (amending 18 U.S.C. § 3582); *United States v. Rodd*, 966 F.3d 740, 744–45 (8th Cir. 2020) (reviewing how the First Step Act changed the procedures for compassionate-release motions under 18 U.S.C. § 3582(c)(1)(A)). But just like before, granting relief still lies within the district court's discretion. *See Rodd*, 966 F.3d at 747–48. Upon receiving the motion, the court

> *may* reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).

On appeal, Vangh complains that the district court skipped two steps on the way to denying his motion. The first step was procedural: refusing to give him an evidentiary hearing even after he asked for one. The second was analytical: failing to decide whether he had presented "extraordinary and compelling reasons" for relief. *Id.* On both points, we disagree.

A.

The statutory text all but refutes Vangh's first argument. *See POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 112 (2014) ("Analysis of the statutory text, aided by established principles of interpretation, controls."); *see also United States v. Templeton*, 378 F.3d 845, 849 (8th Cir. 2004) (reviewing a question of statutory interpretation de novo). It "does not mention," much less require, a hearing. *United States v. Williams*, 943 F.3d 841, 843 (8th Cir. 2019); *see* 18 U.S.C. § 3582(c)(1)(A). In fact, it is full of discretionary language, from instructing district courts that they "may" grant the motion to saying that the sentencing factors matter "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); *see Williams*, 943 F.3d at 843 (concluding that a similarly worded provision in the First Step Act does not require a hearing); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 112 (2012) (explaining that "[t]he traditional, commonly repeated rule is that *shall* is mandatory and *may* is permissive"). It is unreasonable to read a statute to *mandate* a procedural step that it does not mention. *See Alabama v. North Carolina*, 560 U.S. 330, 352 (2010) ("We do not—we cannot—add provisions to a federal statute.").

Vangh's answer is that we should just create such a requirement ourselves under our "supervisory powers." Relying on several out-of-circuit cases, he claims that a hearing is necessary whenever: (1) the alleged facts, "if true, would entitle [a] defendant to relief"; and (2) the "allegations are not conclusively refuted by the record." *See, e.g.*, *United States v. Edwards*, No. 97-60326, 1998 WL 546471, at *3 (5th Cir. Aug. 6, 1998) (unpublished per curiam); *United States v. Piper*, 839 F.3d 1261, 1270 (10th Cir. 2016). The problem for Vangh, however, is that there is no more support in the statutory text for adopting these requirements than there is for mandatory hearings of any kind. *See* 18 U.S.C. § 3582(c)(1)(A). The bottom line

is that we decline to supplement the language of an unambiguous statute with requirements of our own.[2] *See Alabama*, 560 U.S. at 352.

## B.

The district court also did not make an analytical error. *See Rodd*, 966 F.3d at 746 (reviewing "the applicability of the First Step Act to a defendant's case" de novo and the "decision to grant or deny an authorized sentence reduction" for an abuse of discretion (quotation marks omitted)). Contrary to Vangh's argument, the court considered whether his reasons for a reduction were "extraordinary and compelling" before ultimately denying relief. 18 U.S.C. § 3582(c)(1)(A)(i).

In fact, the district court discussed Vangh's reasons in great detail, including each of his medical conditions and the treatments he was receiving for them. Based on those conditions, it concluded that he suffered from "serious health issues," but denied relief anyway because he was receiving "world-renowned health care at the Mayo Clinic" and "ha[d] not demonstrated how his condition ha[d] substantially diminished his ability to provide self-care within the environment of a correctional facility." *See* U.S.S.G. § 1B1.13 cmt. n.1(A) (using similar language to describe an extraordinary-and-compelling reason).[3] In substance, the court was saying that, in light of the assistive devices he already had and the level of treatment provided, Vangh did not quite meet the extraordinary-and-compelling-reasons standard, even if it did not use those magic words. *See id.*; *see also United States v. Loggins*, 966 F.3d 891, 892 (8th Cir. 2020) ("[T]he district court's order shows that it considered the circumstances urged by [the defendant] and found them insufficient."). So even

---

[2]Nor is a hearing required simply because the district court may have been mistaken about whether the warden of Vangh's facility supported his request. Again, "[t]he text controls." *Williams*, 943 F.3d at 843.

[3]The parties agree that the policy statement in U.S.S.G. § 1B1.13 continues to apply to compassionate-release motions filed after the passage of the First Step Act. We assume, without deciding, that it does. *See Rodd*, 966 F.3d at 747 (sidestepping the question); *Loggins*, 966 F.3d at 892 (same).

assuming that Vangh is right that the court *first* had to decide whether extraordinary-and-compelling circumstances existed, we have no doubt that it did.

## III.

We accordingly affirm the judgment of the district court.

_____