# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3144

_____

United States of America

*Plaintiff - Appellee*

v.

Sharmake Mohamed Abdullahi, also known as Memphis

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Eastern

_____

Submitted: October 24, 2024
Filed: July 21, 2025

_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

A jury convicted Sharmake Mohamed Abdullahi of kidnapping and attempted witness tampering. On appeal, he challenges the district court's admission of certain evidence, the denial of his motion for a mistrial, and the sufficiency of the evidence on both counts. Having jurisdiction under 28 U.S.C. § 1291, we vacate the attempted-witness-tampering conviction and otherwise affirm.

In late October 2021, Shamsa Issack was sitting in her car in Fargo, North Dakota, when a man approached. Recognizing that man was Somali—like she was—and thinking that he might need help, Issack rolled down her window, but the man displayed a gun and ordered her to open the door, so she did. The man got in the car and, with the gun to her hip, ordered Issack to drive across the Red River to an address in Moorhead, Minnesota. Issack followed his orders and headed onto the interstate towards Moorhead.

Once across the state line, the man directed Issack to take an exit. She did so, and the man ordered her to pull into a drive-up ATM at a bank in Moorhead. Again following his commands, Issack brought the car to a stop in the ATM lane. The man told Issack that he needed money for rent, so he grabbed her purse and wallet and began handing her several cards to try, still keeping the gun pointed at her hip. At one point, he pulled out Issack's driver's license and told her he knew where she lived and would find her if she went to the police. Issack continued to try the cards at the ATM, but none worked. The ATM's security camera captured footage of the interaction.

As his attempts to withdraw cash were unsuccessful, the man ordered Issack to take him to his originally requested destination. Issack pulled out of the ATM lane but stopped the car in the bank parking lot. The man demanded that she keep driving, but Issack refused. She tried to get out of the car, but the man pulled her back before taking her cell phone and fleeing on foot. From start to finish, the entire encounter lasted about 15 minutes, and Issack was forced to drive over three miles.

With her assailant gone, Issack got out of her car to get help. She asked the bank tellers at a drive-up window to call 911, then parked her car and headed inside the bank. Issack was hyperventilating and crying, struggling to come up with the words to describe what happened. Although she was shaking and "visibly distraught," Issack was able to relay her story to several bank employees while

waiting for police to arrive.  Once they did, Issack had a similar conversation with one of the responding officers, who recorded the interaction.

Further investigation soon revealed that Abdullahi was Issack's assailant.  He was arrested on state robbery and kidnapping charges and placed into state custody at a state correctional facility in Minnesota.  While there, Abdullahi was interviewed by a detective from the Moorhead Police Department.  He was unaware that federal agents were listening to the interview in a separate room.

After the interview, Abdullahi made several phone calls to family members. In the first, on November 15, Abdullahi told his sister, Shukri, to "look for the Somali girl," and that "all these things will ease up" if the "Somali girl does not come."  If the "Somali girl" came, however, Abudllahi told his sister, he would get "[redacted] years."[1]  He also suggested someone could give the girl money and tell her to hide someplace.  Later that same day, Abdullahi again called Shukri.  In addition to reiterating his request to find "her," Abdullahi and his sister discussed hiring an attorney, arranging for bond, and attending his upcoming court date in state court. He had a similar call with his grandmother two days later, again referencing "the Somali girl" and his need for a lawyer.

Then, on November 17, Abdullahi was indicted in federal court on one count of kidnapping, in violation of 18 U.S.C. § 1201(a)(1).  He was arraigned the following day and detained pending trial at a correctional facility in Fargo.  Like in his earlier detention, Abdullahi again made several phone calls to his sister.  In one, he explained for the first time that he was facing federal charges, not just those brought by the state.  He also reiterated that his "whole problem" would "vanish[]" if the girl "writes a letter to them saying this is not the man," and that "the worst thing that could happen is if she comes, because even the lawyer cannot do

---

[1]The parties agreed to redact the sentence that Abdullahi thought he faced from the transcript the Government introduced.

anything." Toward the end of 2021, Issack received several phone calls from people who identified themselves as Abdullahi's grandmother and sister.

Six months later, Abdullahi was named in a superseding indictment. The new indictment retained the kidnapping charge and added one count of attempted witness tampering, in violation of 18 U.S.C. §§ 1512(b)(1) and 2. Specifically, the indictment alleged that, "[o]n or about November 15, 2021," Abdullahi attempted to influence, delay, and prevent Issack's testimony in the now-charged federal case. He pled not guilty to both charges, and the case proceeded to trial.

In addition to having Issack take the stand, the Government called several of the bank employees to testify. Over Abdullahi's objection, the district court admitted evidence of Issack's statements to the employees describing her encounter with Abdullahi. The district court concluded that, while Issack's statements were definitionally hearsay under Federal Rule of Evidence 801, they were admissible as present sense impressions or excited utterances under Rules 803(1) or 803(2).

The district court also admitted the audio recording of Issack's conversation with police officers at the bank, and the Government played the audio for the jury. Halfway through the recording, however, the district court instructed the Government to pause the audio. It was "largely unintelligible" and risked confusing and misleading the jury,[2] so the court struck the audio from the record and instructed the jury to disregard whatever it "understood and heard, if anything." Abdullahi moved for a mistrial, but the district court denied his motion, concluding its curative instruction was sufficient.

The trial proceeded, and the case was submitted to the jury. The district court instructed the jury that the Government was relying on a single phone call, the first from November 15, to support the attempted-witness-tampering count, but the

---

[2]At one point, the district court stated that Issack's statements were hearsay without an exception. Later, however, the district court clarified that it struck the recording under Federal Rule of Evidence 403.

district court permitted the jury to consider the other phone calls for other purposes. After deliberating for several hours, the jury found Abdullahi guilty on both counts, and the district court denied Abdullahi's motion for a judgment of acquittal. Ultimately, the district court sentenced Abdullahi to 180 months' imprisonment on each count, with the sentences to be served concurrently.

II.

Abdullahi first challenges the admission of Issack's statements to bank employees. We review the district court's evidentiary rulings for an abuse of discretion. See United States v. Manfre, 368 F.3d 832, 837 (8th Cir. 2004). The parties agree that these statements were hearsay: out-of-court statements admitted for the truth of the matter asserted. See Fed. R. Evid. 801. The district court nevertheless admitted them as either present sense impressions or excited utterances, both of which are exceptions to the hearsay rule. See Fed. R. Evid. 803(1)-(2).

As already noted, moments after Abdullahi left the scene, Issack went into the bank and described in detail what happened. While relaying her story, Issack was crying, hyperventilating, "visibly distraught," and struggling to come up with the words to describe what had just occurred.

These statements are classic examples of excited utterances—"statement[s] relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). They came within minutes of the kidnapping, which would be a "startling event" for anyone. See id. It in fact was so for Issack, who was "shaking," "upset," "distraught," and "having a hard time coming up with words" as she was talking. See United States v. Phelps, 168 F.3d 1048, 1055 (8th Cir. 1999) (concluding that there was no abuse of discretion in admitting statement as excited utterances where declarant "spoke quickly, was out of breath, and sounded scared and nervous"). The court did not abuse its discretion in treating her statements as "spontaneous, excited[,] or impulsive rather than the product of reflection and deliberation." See United States v. Graves, 756 F.3d 602,

-5-

605-06 (8th Cir. 2014) (citation omitted) (treating a victim's statements as excited utterances when she was "shaking and appeared to have been crying" even though 30 minutes had passed since the startling event); Phelps, 168 F.3d at 1055 (involving testimony by a 911 operator who repeated what a woman who "sounded very upset" told her after someone had shot at her).

## III.

Unlike Issack's statements to bank employees, the district court eventually excluded the recording of her statements to a responding officer. But it did so only after the jury heard a substantial portion of the audio. Although the district court instructed the jury to "disregard" whatever it "understood and heard, if anything," it denied Abdullahi's motion for a mistrial, and we review that decision for an abuse of discretion. See United States v. Arias, 936 F.3d 793, 798 (8th Cir. 2019); see also United States v. Urqhart, 469 F.3d 745, 749 (8th Cir. 2006) (explaining that any error in denying a mistrial is harmless if there was "substantial evidence of . . . guilt" (citation omitted)).

The district court acted within that discretion here. It concluded that the less drastic steps of striking the evidence from the record and providing a curative instruction would remedy any harm. See United States v. Brandon, 521 F.3d 1019, 1026 (8th Cir. 2008); see also United States v. Collier, 116 F.4th 756, 767 (8th Cir. 2024) (observing that "[c]urative instructions are ordinarily preferable to mistrials and 'generally sufficient to alleviate prejudice'" (citation omitted)); Arias, 936 F.3d at 798 (noting that courts presume juries follow instructions, absent "an overwhelming probability" to the contrary (citation omitted)). We cannot say the court abused its discretion, especially after it concluded the jury could not "hear what [was] being said" anyway.

Abdullahi suffered no prejudice from the decision, either. The content of the recording was "cumulative" of what others said, see United States v. Ramos-Caraballo, 375 F.3d 797, 803 (8th Cir. 2004), including Issack herself and

-6-

the bank employees, each of whom was subject to cross-examination, see United States v. White, 11 F.3d 1446, 1451 (8th Cir. 1993) (observing that, when "[o]ther evidence to the same effect [is] properly before the jury," evidence admitted in error is harmless (alteration in original) (citation omitted)). Even aside from the trial testimony, the bank's surveillance footage showed Abdullahi pointing a gun at Issack, removing her wallet, and handing her credit cards to put into the ATM. Taken together, the evidence on the kidnapping charge was at least "substantial," if not overwhelming. See Urqhart, 469 F.3d at 749. For those reasons, the district court did not abuse its discretion when it declined to grant a mistrial.

IV.

Abdullahi also argues that the evidence was insufficient to support his convictions. We review his argument de novo, "evaluating the evidence in the light most favorable to the verdict and drawing all reasonable inferences in its favor." United States v. Parker, 871 F.3d 590, 600 (8th Cir. 2017) (citation omitted). We will reverse "only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Ways, 832 F.3d 887, 894 (8th Cir. 2016). Abdullahi challenges both his kidnapping and attempted-witness-tampering convictions, and we address each argument in turn.

A.

To convict him of kidnapping, the jury had to find that Abdullahi "h[eld] [Issack] for ransom or reward or otherwise" and "willfully transported" her in "interstate or foreign commerce" after "unlawfully seiz[ing], confin[ing], inveigl[ing], decoy[ing], kidnap[ping], abduct[ing], or carr[ying] [her] away." 18 U.S.C. § 1201(a)(1); see United States v. Lussier, 844 F.3d 1019, 1023 (8th Cir. 2017). Taken literally, the statute could apply to a broad range of conduct beyond stereotypical kidnapping. But courts have long interpreted the statute more narrowly, confining the prohibition to "the very essence of the crime of kidnap[p]ing." See Chatwin v. United States, 326 U.S. 455, 464–65 (1946); see also

United States v. Toledo, 985 F.2d 1462, 1465 (10th Cir. 1993) ("Section 1201 essentially federalizes the common-law crime of kidnapping . . . .").

Abdullahi suggests one such interpretation that could justify reversal in this case. He directs us to Government of the Virgin Islands v. Berry, where the Third Circuit interpreted a similarly worded kidnapping statute. See 604 F.2d 221, 225-27 (3d Cir. 1979). Relying on the Supreme Court's decision in Chatwin and a substantial body of state law, the Third Circuit distilled four factors to distinguish a kidnapping from a contemporaneous underlying offense:

> (1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.

Id. at 626-27. Several of our sister Circuits have interpreted § 1201 in the same way, see United States v. Howard, 918 F.2d 1529, 1536-37 (11th Cir. 1990); United States v. Jackson, 24 F.4th 1308, 1314 (9th Cir. 2022), while others have endorsed a similar interpretation, see United States v. Krivoi, 80 F.4th 142, 153 (2d Cir. 2023) (requiring a detention to be "appreciably longer" than that required for an underlying offense); United States v. Murphy, 100 F.4th 1184, 1196-97 (10th Cir. 2024) (interpreting § 1201 to require any "hold[ing]" to be "more than coterminous with the time necessary to carry out any related offense" (alteration in original)). In each of these cases, the courts interpreted "the 'hold[ing]' provision of § 1201" more narrowly than the phrase's literal definition. Murphy, 100 F.4th at 1197; see also Bostock v. Clayton Cnty., 590 U.S. 644, 674 (2020) (describing the "subtle distinctions between literal and ordinary meaning").

Abdullahi urges us to adopt such a limiting principle here. He asserts that § 1201, as properly interpreted, includes the Berry factors. When applying them to this case, he claims, the evidence showed only a robbery, not a distinct kidnapping.

-8-

The Government disagrees, both with Abdullahi and with our sister Circuits. It argues that <u>Berry</u> is categorically inapplicable when, as here, the victim is willfully transported across state lines, <u>see</u> 18 U.S.C. § 1201(a)(1), as opposed to cases where federal jurisdiction rests on some other basis, <u>see</u> <u>id.</u> § 1201(a)(1)-(5); <u>see also</u> <u>United States v. Wills</u>, 234 F.3d 174, 177 (4th Cir. 2000) (noting the "five avenues to establish federal jurisdiction" under § 1201).

Ultimately, however, "we find it unnecessary to decide" whether <u>Berry</u> or a similar interpretation like that in <u>Murphy</u> is appropriate,[3] because a reasonable jury could find Abdullahi committed a kidnapping that was distinguishable from his robbery under any of the alternatives. <u>See</u> <u>United States v. Peden</u>, 961 F.2d 517, 522 (5th Cir. 1992) (declining to address applicability of <u>Berry</u> to § 1201). Abdullahi robbed Issack only after forcing her to drive almost four miles, he could have done so without driving such a distance, and making her drive that distance at gunpoint "created a significant danger . . . independent of that posed by" the robbery. <u>See</u> <u>Berry</u>, 604 F.2d at 227. This is true regardless of Abdullahi's objective. <u>See</u> <u>United States v. Healy</u>, 376 U.S. 75, 81 (1964) (concluding that "for ransom, reward or otherwise" under § 1201 encompasses any reason which is of benefit to the defendant).

While Abdullahi notes that the encounter lasted only 15 minutes, the robbery could have been achieved in substantially less time and did not require driving on

---

[3]The concurrence describes the <u>Berry</u> factors as an ill-advised attempt to supplement the statutory text. <u>See</u> <u>post</u>, at 16-19. We need not address this contention, however, as our analysis makes clear that we do not definitively adopt the <u>Berry</u> factors or any limiting construction in this case because it is unnecessary to do so. We recognize the judicial obligation not to add words to an otherwise unambiguous statute, but we are mindful of another "cardinal principle" of the judicial role: "[I]f it is not necessary to decide more, it is necessary not to decide more." <u>PDK Lab'ys Inc. v. Drug Enf't Admin.</u>, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment). And we abide by that principle here—perhaps the simplest path, which the concurrence notes is sometimes best. <u>See</u> <u>post</u>, at 16 n.7 (discussing Ockham's razor).

the interstate or crossing state lines.  See Peden, 961 F.2d at 522 (observing that "there would be no kidnapping" if the defendant had "merely taken [the victim] off to the bathroom").  The mere fact that the "hold[ing]" was relatively brief is not dispositive under Berry; the ultimate question is whether "the asportation and detention went beyond that necessarily inherent" in the underlying crime.  See id.; Murphy, 100 F.4th at 1199 (requiring "an appreciable temporal period of detention (i.e., holding) beyond that necessary to commit any other offense").  Because a reasonable jury could find that such a "holding" occurred here, Abdullahi's argument fails.

B.

Abdullahi also challenges his conviction for attempted witness tampering, which required the Government to have proven two elements.  First, Abudllahi must have "knowingly use[d] intimidation, threaten[ed], or corruptly persuad[ed] another person," 18 U.S.C. § 1512(b), and second, he must have done so intending to "influence, delay, or prevent the testimony of any person in an official proceeding," id. § 1512(b)(1).  See United States v. Richardson, 92 F.4th 728, 730 (8th Cir. 2024).  As relevant here, "official proceedings" include those before federal courts, but not state ones.  18 U.S.C. § 1515(a)(1)(A).

In obstruction prosecutions like this one, "an official proceeding need not be pending or about to be instituted at the time of the offense."  Id. § 1512(f)(1).  Nor must the Government prove that a defendant knew or should have known that the proceeding was a federal one.  See id. § 1512(g)(1).  To meet its burden, however, the Government must prove "that the defendant contemplated a particular, foreseeable proceeding, and that the contemplated proceeding constituted an 'official proceeding.'"[4]  United States v. Petruk, 781 F.3d 438, 445 (8th Cir. 2015)

_____

[4]The concurrence states that the Court today "leaves the door open" to new elements in an otherwise unambiguous statute.  Post, at 15.  However, we have already interpreted 18 U.S.C. § 1512(b)(1) to include a nexus requirement, Richardson, 92 F.4th at 731, and as the concurrence acknowledges, we are not free

-10-

(citing Arthur Andersen LLP v. United States, 544 U.S. 696, 708 (2005)) (applying this so-called "nexus requirement" to 18 U.S.C. § 1512(c)(2)); Richardson, 92 F.4th at 731 (extending the nexus requirement to § 1512(b)(1) for the first time). According to Abdullahi, the Government failed to prove that he actually contemplated such a proceeding.

He analogizes to Petruk, in which we reversed a conviction for obstruction of an official proceeding under 18 U.S.C. § 1512(c)(2). 781 F.3d at 446. There, while incarcerated in state prison on state carjacking charges, the defendant made several phone calls to a friend to develop a false alibi. Id. at 440-41. At that time, there was no federal indictment, and there was no evidence that the defendant knew or contemplated any proceedings beyond his then-pending state charges. Id. at 445; see also United States v. Shavers, 693 F.3d 363, 379-81 (3d Cir. 2012), vacated on other grounds by Shavers v. United States, 570 U.S. 913 (2013) (reversing § 1512(b)(1) conviction where Government did not prove defendants "contemplated any other proceeding" besides pending state charges); United States v. Sutton, 30 F.4th 981, 985 (10th Cir. 2022) (same).

Here, the Government relied on Abdullahi's first phone call from November 15 as the operative attempt. Like the defendant in Petruk, Abdullahi was in state custody on state charges, had been interrogated by a state officer, and had only been scheduled for state proceedings. Abdullahi had not been told and did not know that he was under federal investigation, nor did he know that additional charges might be filed, whether state or federal. How could he have contemplated an additional proceeding that he did not know about? See Sutton, 30 F.4th at 989 (considering a defendant in state custody, for state crimes, who only interacted with state authorities); Shavers, 693 F.3d at 379–80 (same). The Government offers three potential answers to that question. None is convincing.

---

to disregard that holding. See Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011) (en banc).

-11-

First, the Government asserts that the interstate nature of the underlying robbery and kidnapping were sufficient to put Abdullahi on notice that he could face federal charges. See Appellee Br. 18 (citing United States v. Holness, Civ. No. WMN-14-3072, 2017 WL 1133699 at *4 (D. Md. Mar. 27, 2017)). But incidentally crossing state lines is not sufficient to show that a defendant actually contemplated an official proceeding, especially where, as here, Abdullahi traveled within a single metro area. See Sutton, 30 F.4th at 990 (rejecting argument that "the federal proceeding was foreseeable . . . because of the magnitude of the drug conspiracy"); cf. Holness, 1017 WL 1133699 at *4 (denying motion for acquittal when defendant crossed through multiple states, used U.S. mail, was an active member of U.S. armed forces, and was under investigation for passport fraud). Further, whatever the merits of the Government's argument that some crimes are inherently federal,[5] the Government did not offer the jury any evidence to that effect. While a jury can use "common sense and experience," it may only consider the evidence presented to it. See United States v. Booker, 576 F.3d 506, 509 (8th Cir. 2009). The Government's evidence falls flat on this point.

More importantly, though, this argument misses the point. What the Government had to prove was that Abdullahi "ha[d] in contemplation a[] particular" federal proceeding, Arthur Andersen, 544 U.S. at 708, not that he knew the proceeding was federal, see Fowler v. United States, 563 U.S. 668, 679 (2011) (Scalia, J., concurring in the judgment); Petruk, 781 F.3d at 444 (citing 18 U.S.C. § 1512(g)(1)). Because he was only facing state charges at the time, the Government had to show that Abdullahi specifically contemplated an additional proceeding. See Shavers, 693 F.3d at 380; Petruk, 781 F.3d at 446; Sutton, 30 F.4th at 989. To be sure, obstructive conduct might itself demonstrate that a defendant "contemplated criminal liability in *a* future proceeding." See United States v. Mink, 9 F.4th 590,

---

[5]But see Minn. Stat. Ann. § 609.25 (kidnapping); Minn. Stat. Ann. § 609.245 (aggravated robbery). Taking the Government's argument at face value would also turn effectively every case of potential witness tampering into a federal crime, given the substantial overlap between federal and state criminal law. See, e.g., Petruk, 781 F.3d at 440 (discussing state and federal carjacking).

-12-

610 (8th Cir. 2021) (emphasis added) (instructing accomplice to destroy evidence after search but before indictment). The question is not whether Abdullahi contemplated facing criminal charges at all; he must have contemplated a *particular* proceeding, and the nature of the phone call here only proves he was thinking of his pending state case. Cf. Richardson, 92 F.4th at 731.

The Government next posits that the jury could reasonably infer Abdullahi's contemplation from his statement that he would "receive [redacted] years" in prison. Statements like this can be evidence of such intent, even where a defendant is already facing state charges. See, e.g., Richardson, 92 F.4th at 731-32 (noting that defendant specifically discussed "going federal"). Abdullahi's statements here do not do so, however, and the jury was not instructed on the disparities between federal and state sentences. Even assuming it were, there is nothing to connect the statement to anything besides state proceedings. Abdullahi only said that he would get "[redacted] years." This is a far cry from statements that could support such an inference. See id. at 731 (recounting defendant's statement that he would "take the other charge"); compare 18 U.S.C. § 1201(a) (authorizing imprisonment for kidnapping "for any term of years"), with Minn. Stat. Ann. § 609.245 (limiting imprisonment for aggravated robbery to "not more than 20 years") and id. § 609.25 (limiting imprisonment for kidnapping to "not more than 40 years"). Abdullahi's concern that he might get "years" in prison provides no basis, then, for the jury to conclude he actually contemplated a "particular, foreseeable 'official proceeding.'" See Petruk, 781 F.3d at 446 (citation omitted).

While our review requires "accepting all reasonable inferences that support the verdict," United States v. Sherman, 81 F.4th 800, 806 (8th Cir. 2023), the Government's proposed inferences would be unreasonable. Take, for instance, Abdullahi's statement that "all these things will ease up" if Issack didn't cooperate. The Government suggests that Abdullahi's concern about multiple "things" could reasonably suggest he was concerned about other proceedings. But Abdullahi said that immediately after discussing his need of a lawyer for his state court case and

-13-

just before requesting money for jail calls from state prison. All of this context undermines the Government's argument, even construing the evidence in its favor.

Evidence from other calls also proves instructive.[6] In a call from later on that same day, Abdullahi explicitly referenced his upcoming court date in state court. See, e.g., Petruk, 781 F.3d at 446 (concluding evidence was insufficient where defendant focused only on pending state case). Had he contemplated an additional proceeding, there would be likely evidence of it. There in fact was, but only *after* he was indicted and arraigned on federal charges. On November 15, the operative date, there is no evidence that he knew—let alone foresaw—any additional proceedings. As the Supreme Court has advised, "[i]t is, however, one thing to say that a proceeding 'need not be pending or about to be instituted at the time of the offense,' . . . [but] quite another to say a proceeding need not even be foreseen." See Arthur Andersen, 544 U.S. at 708-09 (citation omitted)).

Finally, the Government asserts that, because the federal investigation was contemporaneous with the state charges, Petruk and Shavers are distinguishable, as the federal indictments in those cases were filed months later. See Appellee Br. 25 (citing United States v. Aguilar, 515 U.S. 593, 599 (1995)). Contemporaneity alone, however, is not sufficient. See Aguilar, 515 U.S. at 599 (interpreting 18 U.S.C. § 1503 to require "a relationship in time, causation, or logic" between an obstructive act and judicial proceedings). That Abdullahi's interrogation was secretly observed by federal agents certainly proves that an additional federal proceeding was likely; it does not prove, however, that Abdullahi actually contemplated that proceeding. There is no evidence he did so here. There is no evidence that he knew the federal agents were listening, "much less that [he] was aware of [the] investigation at that

---

[6]The Government asserts that Abdullahi is estopped from relying on later calls because the jury was instructed to examine only the first November 15 call on the witness tampering count. But the instructions only limited which call could serve as the attempt itself. They permitted the jury—and thus this court—to consider other calls for other purposes. Thus, Abdullahi properly invokes the subsequent calls as evidence of his mental state at the time of the first call.

time." <u>Petruk</u>, 781 F.3d at 446.  There is no evidence he contemplated anything beyond what he already faced: state charges.

The Government was not required to prove that Abdullahi knew he was being investigated by federal authorities.  <u>See</u> <u>Richardson</u>, 92 F.4th at 731 (upholding conviction where defendant contemplated federal charges before he was indicted). Nor was it required to prove that an official proceeding was pending, 18 U.S.C. § 1512(f)(1), or that Abdullahi knew the proceeding was federal, <u>id.</u> § 1512(g)(1). But it was required to prove that Abdullahi actually contemplated a "particular, foreseeable" official proceeding beyond what he already faced.  <u>See</u> <u>Petruk</u>, 781 F.3d at 446.  All of the evidence indicates that he did not.  Accordingly, even reading the facts in the light most favorable to the Government, a rational jury could not have found that he contemplated a "particular, foreseeable proceeding" other than his pending charges in state court.  <u>See</u> <u>id.</u> at 445.  Because those proceedings do not meet the statute's definition of "official proceeding," <u>see</u> 18 U.S.C. § 1515(a)(1), Abdullahi's conviction for attempted witness tampering must be vacated.

V.

For these reasons, we vacate Abdullahi's attempted-witness-tampering conviction but otherwise affirm.

STRAS, Circuit Judge, concurring in part and concurring in the judgment.

Sufficiency-of-the-evidence review is about whether the government has proven its case.  It is not an opportunity to add elements to crimes Congress has already defined.  *See Musacchio v. United States*, 577 U.S. 237, 243–44 (2016).  The court leaves the door open for new ones, which is why I cannot join in full.

## I.

The first time is when reviewing Sharmake Abdullahi's kidnapping conviction. As charged here, the government had to prove that he (1) "unlawfully seize[d]" Shamsa Issack, (2) "willfully transported [her] in interstate . . . commerce," and (3) held her "for ransom or reward or otherwise." 18 U.S.C. § 1201(a)(1); *see United States v. Lussier*, 844 F.3d 1019, 1023 (8th Cir. 2017). Abdullahi did all three: he (1) seized Issack at gunpoint; (2) instructed her to drive from North Dakota to Minnesota; and (3) had the goal of rewarding himself with money from an ATM. Affirming should have been that easy. *See Lussier*, 844 F.3d at 1023–24.

Instead, the court takes a detour back in time to the Virgin Islands. Nearly 50 years ago, the Third Circuit abandoned "the literal meaning" of a local kidnapping statute in favor of "a [more] sensible construction." *Gov't of the Virgin Islands v. Berry*, 604 F.2d 221, 225 (3d Cir. 1979) (quoting *United States v. Kirby*, 74 U.S. (7 Wall.) 482, 486 (1868)). If that were not warning enough, it then added elements to the crime to protect defendants "who have committed . . . robbery or assault" from kidnapping's "far greater penalties." *Id.* at 226. But only sometimes. These new elements—the so-called *Berry* factors—come into play only when various features of the "detention" relate to one of those "separate offense[s]." *Id.* at 227. They are just the sort of subjective and difficult-to-apply considerations that confuse judges and juries.[7] *See United States v. Murphy*, 100 F.4th 1184, 1198–99, 1199 n.12 (10th

---

[7]Unlike the court, which reserves the right to adopt the *Berry* factors in some future case, I would just reject them once and for all. No need to pretend the law is something it is not, especially when the court's assume-without-deciding approach rests on assumptions about how quickly Abdullahi "could have . . . achieved" a similar robbery without leaving Fargo. *Ante*, at 9. Simpler is better, especially when it comes to proving a criminal offense. *See* Paul Vincent Spade, Claude Panaccio & Jenny Pelletier, *William of Ockham*, The Stanford Encyclopedia of Philosophy § 4.1 (Summer 2025 ed.) (describing Ockham's Razor); *Bonded Fin. Servs., Inc. v. Eur. Am. Bank*, 838 F.2d 890, 894 (7th Cir. 1988) (using it to "slice . . . off" unnecessary analytical steps).

Cir. 2024) (rejecting *Berry* itself while "endors[ing] th[e] unifying theme" of the cases following it); *see also Ames v. Ohio Dep't of Youth Servs.*, 145 S. Ct. 1540, 1548 (2025) (Thomas, J., concurring) ("Judge-made doctrines have a tendency to distort the underlying statutory text, impose unnecessary burdens on litigants, and cause confusion for courts.").

They are also nowhere to be found on the face of the federal kidnapping statute.[8]  *See* 18 U.S.C. § 1201(a).  Search in vain for anything requiring courts or juries to consider:

> (1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred [was] inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.

*Berry*, 604 F.2d at 227.  Not one of those elements is present, nor does the statute suggest that a crime like robbery or assault can subsume a kidnapping.[9]  *See United States v. Wolford*, 444 F.2d 876, 882–83 (D.C. Cir. 1971) (holding that there is no

---

[8]Nor, for that matter, on the face of the Virgin Islands kidnapping statute in *Berry*.  *See* 604 F.2d at 224 (quoting V.I. Code Ann. tit. 14, § 1052 (1978)).

[9]If either did, it would result in a sort of reverse merger, with the *less* serious crime swallowing the *more* serious one.  *Cf.* 2 Wayne R. LaFave, *Substantive Criminal Law*, § 11.5(c), at 33 (3d ed. Supp. 2024) (explaining that "where [a] defendant has completed [an] offense and is charged and convicted on that basis, [an] attempt 'merges' into the completed offense"); *Prince v. United States*, 352 U.S. 322, 324 (1957) (holding that "the crime of entering a bank with intent to commit a robbery is merged with the crime of robbery when the latter is consummated").  Nothing like it existed at common law.  *See* William L. Clark, Jr., *Hand-Book of Criminal Law* 43 (Francis B. Tiffany ed., 2d ed., 1902) (noting that the "rule[] at common law" was that "where a person by the same act commits two crimes, one a felony and the other a misdemeanor, the misdemeanor merges in the felony," not the other way around).

-17-

"merger" of robbery and kidnapping convictions).  Even if there were "wisdom" to these factors, *United States v. Jackson*, 24 F.4th 1308, 1312 (9th Cir. 2022), it is not our job to "supplement the language of an unambiguous statute with requirements of our own," *United States v. Vangh*, 990 F.3d 1138, 1140 (8th Cir. 2021); *see Alabama v. North Carolina*, 560 U.S. 330, 352 (2010) (noting that "[w]e do not—we cannot—add provisions to a federal statute").

It turns out they are lacking in "wisdom" too, *Jackson*, 24 F.4th at 1312, because the statute has its own guardrails to prevent "overzealous enforcement," *Berry*, 604 F.2d at 226.  One is the word "hold[]," 18 U.S.C. § 1201(a), which requires "an unlawful physical or mental restraint for an *appreciable period* against the person's will," *Chatwin v. United States*, 326 U.S. 455, 460 (1946) (emphasis added).  *See id.* at 460, 464 (explaining that a "care[ful]" reading of the "holding" element ensures that the statute reaches only "true kidnappings").  "Seiz[ing], confin[ing], inveigl[ing], decoy[ing], kidnap[ping], abduct[ing], or carr[ying] away" could happen in seconds, 18 U.S.C. § 1201(a), but holding someone for an "appreciable period" requires more, *Chatwin*, 326 U.S. at 460.  The holding element, in other words, already imposes a durational minimum.  *See City of Chicago v. Fulton*, 592 U.S. 154, 159 (2021) (rejecting "an interpretation [that] would render superfluous another part of the same statutory scheme" (citation omitted)).

Another built-in constraint is the benefit that drives the crime: the "ransom or reward or otherwise."  18 U.S.C. § 1201(a); *see Gooch v. United States*, 297 U.S. 124, 128 (1936); *see also United States v. Healy*, 376 U.S. 75, 81–82 (1964) (recognizing that a kidnapping must "s[eek] to . . . further[]" some "ultimate purpose," though it need not be "pecuniary" or "intrinsically illegal").  If the holding is merely incidental and not intended by "the captor [to] secure some benefit to himself," then it is not a kidnapping.  *Gooch*, 297 U.S. at 128.  As a matter of plain meaning, the benefit must be above and beyond whatever satisfaction comes from the kidnapping itself.

To be sure, courts have applied this requirement loosely. So loosely, in fact, that it covers nearly *any* benefit to the kidnapper. *See United States v. McCabe*, 812 F.2d 1060, 1062 (8th Cir. 1987) (suggesting, circularly, that the "[p]urpose" element is satisfied whenever the "object of a kidnapping" was "of sufficient benefit to [the perpetrator] to induce him to undertake it" (quoting *Wolford*, 444 F.2d at 881)). Rather than trying to "fix" the problem by adding elements, better to return to the statute's original meaning. *See Fulton*, 592 U.S. at 159; *Vangh*, 990 F.3d at 1140.

The concurrence in *Berry* presciently summarized the problem decades ago: "importing a gloss on the asportation or detention requirement . . . introduce[s] instability and uncertainty in an important area of criminal jurisprudence." *Berry*, 604 F.2d at 230 (Rosenn, J., concurring); *see also* V.I. Code Ann. tit. 14, § 1052 (1978) (requiring a kidnapper to "hold or detain" the victim "for ransom, reward or to commit extortion or to exact from any person or entity any money or valuable thing"). When the statute tells us all we need to know about what a kidnapping requires, there is no need to add anything else.

## II.

There is a similar problem with the attempted-witness-tampering count, except this time it involves the government's failure to prove an element that does not exist. Starting with the elements that do, the evidence shows that Abdullahi tried to "intimidat[e], threaten[], or corruptly persuade[]" Issack with the goal of "influenc[ing], delay[ing], or prevent[ing] [her] testimony." 18 U.S.C. § 1512(b)(1). Even though she decided to testify anyway, *see id.* (prohibiting "attempts"), what matters is that she did so in this case, a federal prosecution, which qualifies as an "official proceeding." *Id.*; *see id.* § 1515(a)(1) (defining "official proceeding[s]" as including those "before a judge or court of the United States"). Once again, sufficiency ought to be that easy. *See United States v. Richardson*, 92 F.4th 728, 730 (8th Cir. 2024).

It *should* make no difference that Abdullahi was still in the dark about the possibility of a federal case when he urged his sister to act. The expectation that Issack would "testi[fy]" in some proceeding at some point gave him all the "intent" he needed. 18 U.S.C. § 1512(b)(1). His goal, after all, was to "prevent [her] testimony" in *every* proceeding, official or not. *Id.*

The requirement that the proceeding be "official"—here, one in federal court—should be an attendant circumstance about which "no state of mind need be proved." *Id.* § 1512(g). The element is either present or not. Nothing in the statute requires the tamperer to *intend* to influence a federal proceeding. Nor is it necessary to imply an extra mens rea "to separate wrongful conduct from otherwise innocent conduct." *Elonis v. United States*, 575 U.S. 723, 736 (2015) (citation omitted). Intimidating, threatening, or corruptly persuading *any* witness is both immoral and illegal, whether the underlying proceeding is federal or not. *See Staples v. United States*, 511 U.S. 600, 605 (1994) (explaining that "the background rules of the common law" require only "that the defendant know the facts that make his conduct illegal").

Something similar happens in 21 U.S.C. § 860(a), which requires the government to prove that a defendant sold drugs within 1,000 feet of a school or playground, but *not* that he knew one was nearby. *See United States v. Dimas*, 3 F.3d 1015, 1022 (7th Cir. 1993) (per curiam). In the witness-tampering statute, a federal nexus exists when a defendant tampers with a federal proceeding, whether he foresaw one or not. *See* 18 U.S.C. § 1512(g); 2 Wayne R. LaFave, *Substantive Criminal Law*, § 12.2(c)(4), at 387 (3d ed. 2018) (explaining that when "the attendant circumstances affording a basis for federal jurisdiction are made an element of [a] crime[,] . . . strict liability is often imposed").

We first held to the contrary in a case called *United States v. Petruk*, which added a special mental-state-like requirement for what would otherwise be a strict-liability element. 781 F.3d 438, 445 (8th Cir. 2015). When a defendant faces state charges, a federal witness-tampering conviction "requires proof" of an extra

element: the tamperer must have "contemplated a particular, foreseeable proceeding . . . before a federal judge, court, or grand jury."[10]  *Id.*  Like the *Berry* factors, it is purely a judicial gloss.  *See Vangh*, 990 F.3d at 1140.  The only reason I continue to apply it is because our precedent requires it.  *See Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) (explaining that one panel cannot overrule another); *see also Richardson*, 92 F.4th at 731 (following *Petruk*).  Not because it is a faithful reading of the text.

––––––––––––––––––––––––––––––

[10]*Petruk*'s suggestion that the federal proceeding must be "foreseeable" makes it even worse.  781 F.3d at 445.  The idea grew out of one line in a Supreme Court opinion explaining that a defendant could not have intended to obstruct a proceeding he had "not even . . . foreseen."  *Arthur Andersen LLP v. United States*, 544 U.S. 696, 708 (2005).  Then we plucked out the last word and changed it to "foreseeable." *Petruk*, 781 F.3d at 445.  With a new suffix and no context, the subjective "intent" demanded by the statute, 18 U.S.C. § 1512(b), suddenly became its own objective element.